## PORTER *vs.* WILDER & SON.

The evidence of compliance by contractors with their contract to furnish materials and build, was sufficient to warrant the verdict, though it was beset with some doubt and much conflict.

It is enough if work and materials conform to the plan prescribed, and to the terms of the contract.

3. Tacit recognition, by the employer, of a compliance with the contract, is some evidence of actual compliance. There were circumstances tending to show such recognition.
4. After the building has been accepted and used without complaint, slight defects relied upon as an excuse for not paying are to be scrutinized.
5. Failure to call on the contractors to remedy or repair alleged defects may be considered by the jury.
6. Mechanic's lien (or contractor's) is not to be resisted by the debtor because he has no title. The better title is not affected by the judgment, the owner being no party.
7. The charge of the court may eliminate all conceded points and lay bare the real matters in dispute, counsel being first admonished to suggest errors of statement if any should occur.

Contracts. New trial. Evidence. Mechanic's lien. Charge of Court. Before Judge Grice. Bibb Superior Court. April Term, 1878.

Wilder & Son brought two suits against Porter, as the installments matured, for balance due for the erection of a livery stable, and also for the enforcement of their mechanic's lien as against the stable and the land upon which it was built. The actions were consolidated and tried together. The defenses filed, and the material facts developed by the proof, are sufficiently reported in the opinion. The jury found for the plaintiffs $600.00, with interest from April 14, 1876, and also a lien on the building and land described in the declaration. The defendant moved for a new trial upon the following grounds:

1. Because the verdict is contrary to law and evidence.

2. Because the court erred in charging, that if plaintiffs were furnished with a plan by defendant, and they built according to that plan, they complied with their contract. That if the plaintiffs followed the plan furnished them b defendant, and put in the materials and did the work according to that plan and the contract, plaintiffs are not to blame if the roof swagged, or the sides bulged, or there were cracks in the floor.

3. Because the court erred in charging, that if defendant

saw the work going on from day to day, and made no complaint to either member of plaintiffs' firm about the lumber used, or the way the work was done, and afterwards accepted the buildings without complaint, and has continued since to occupy them, and has recently painted one or more of them, and still uses and occupies them, these are all circumstances to be considered by the jury as showing whether defendant did, or did not, consider the contract complied with.

4. Because the court erred in charging that slight or trivial defects set up by defendant after he had received the work and occupied the buildings, are to be closely scrutinized.

5. Because the court erred in charging, that if defects were discovered and plaintiffs were not called on to repair them, this is a circumstance to be considered in determining whether defendant considered plaintiffs chargeable with such defects, and whether such defects in fact existed.

6. Because the court erred in charging, that it seems plaintiffs were employed to furnish material and build a stable on part of a lot in the city of Macon, which then was held by Mrs. Porter under the trust deed which was read in evidence to the jury. The contract to build the stable was made with defendant, the husband, but Mrs. Porter assented to the building in writing, and agreed that the stable and the ground on which it was put, should be bound to plaintiffs for their payment. The original price was $1575.00, but the parties disagreed about other terms of the contract, and this disagreement must be settled by the jury from the evidence, as well as all other issues of fact in the case.

7. Because the court erred in charging, that the question of title was not a matter for the consideration of the jury, and although the title was in Mrs. Porter, her trustee being dead, and she having assented that the stable should be built upon her property, the jury had a right to foreclose the lien upon it.

8. Because the evidence shows that the stable was upon the trust estate of Mrs. Porter, and was her property; that the contract was made for said trust estate, and that said estate had received the benefit of the stable: therefore the verdict is wrong, having been rendered against defendant individually, and is not binding upon Mrs. Porter or the trust estate, she not having been a party to the suit.

The motion was overruled and the defendant excepted.

Bacon & Rutherford; E. F. Best, for plaintiff in error.

Lanier & Anderson, for defendants..

Bleckley, Justice.

1. In a suit by a firm of contractors and mechanics against their employer, to recover the balance of the stipulated price of erecting a livery stable entire, including the furnishing of materials (together with charges for some extra work), the defense was, that the plaintiffs committed a breach of the contract on their part, in that the work was not only left incomplete, but, as far as done, was not executed in a workmanlike manner, and that the lumber used was inferior and not suitable for the purpose; the results of which breach were alleged to be, that the pillars whereon the the building rested gave way and partly fell, the roof swagged, the walls bulged, the ceiling and floor of the office and the floor of the granary were full of cracks or open joints; the door-shutters were too thin, and incapable of being closed and securely fastened; the racks and troughs were not properly constructed, etc. The evidence at the trial was conflicting, some of it tending to show that the work and materials were good, and that the imperfections in the building were not due to unskillful or unfaithful work or to inferior lumber, but to the soft and yielding nature of the soil on which the structure was located, and to defects in the plan, which plan was furnished and prescribed by the employer; other parts of the testimony tended to refer the imperfections wholly

to the work and materials and to negative the theory that anything was attributable to soil or plan.   Both parties testified as witnesses, and there were other witnesses, *pro* and *con*, some of them mechanics and others not.   The work was contracted for in August, and was commenced in September.   It proceeded under great pressure; for the stable was wanted for use during an approaching fair to be held in October.   The employer entered, and commenced the occupation whilst the work in its later stages was progressing.   He had before seen, and then saw and continued to see, what kind of work was done, and the character of the materials used.   He made no objection to either.   He was, however, not a mechanic, and what was his general capacity for judging of work or materials does not appear.   He employed other mechanics to repair or better some of the work, instead of calling upon the plaintiffs to do it.   They were his near neighbors.   He made no complaint to them until about the time one of the deferred payments became due according to the contract.   This was after they had retired and left him in possession.   The defects in the lumber, mentioned in the evidence, were that it was not dry, but green; that some of it was knotty, some cracked or split, some not uniform in width, etc. Its being green or being partially seasoned was not disputed.   It was ranked by some of the witnesses as suitable for most of the job, by others as suitable for all of it; by others it was pronounced unsuitable, and put down as of low grade.   Perhaps the most glaring faults in the building did not fully manifest themselves until sometime after the plaintiffs had retired from the job, leaving it as finished.   These faults were the bulging of one of the walls, and the swagging of the roof.   According to some of the evidence, they made the building dangerous.   If they were due to the yielding of the soil or to defects in the plan, they were not chargeable to the plaintiffs.   If they were due to faulty execution of the work, either in the pillars or elsewhere, or to the quality of the materials, the plaintiffs were responsible.  The damage from

them to the stable was estimated by some of the witnesses at a large sum, while, by others, they were said to be easily corrected at small expense. It was thought the ceiling, floors, doors, etc., could be made good for less than one hundred dollars. If the general mass of the lumber was as poor as some of the witnesses considered it, the difference between it and a like quantity of first-class lumber would amount to hundreds of dollars. The contract price of the work was $1,575.00. Extra work was charged for, raising the total of the account to $1,639.25. Credits were entered to the amount of $830.48, leaving the balance sued for $808.77. The defendant pleaded a set off of $50.00, as to which the evidence was conflicting. There was also conflict as to the extra work. The jury found for the plaintiffs $600.00, besides interest. The evidence warranted the verdict, notwithstanding the doubt and conflict to which it is subject.

2. Where contractors and mechanics build according to a prescribed plan furnished by the employer, they are not responsible for consequences resulting from any defect in the plan. And an undertaking to supply materials as well as build is performed when the materials and the work conform to the employer's plan and the terms of the contract. These propositions are in general substance the same as the following extract from the charge of the court, construing the charge in the light of the evidence in the record: "If the plaintiffs were furnished with a plan by the defendant, and they built according to that plan, they complied with their contract. If they followed the plan furnished them by him, and put in the materials and did the work according to that plan and the contract, they are not to blame if the roof swung, or the sides bulged, or there were cracks in the floor."

3. That the employer in a building contract, on the retirement of the builders, recognized the contract as complied with, he not having made then nor until some time afterwards any suggestion to the contrary, is pertinent to

the question of whether the contract was in fact complied with ; and such recognition need not be express, but may be implied from circumstances. In looking for circumstances bearing upon the point, the jury may consider any testimony tending to show that he had seen the work go on from day to day without making complaint to the builders as to the lumber used or as to the execution of the work; that he accepted the building without complaint, and has continued ever since to occupy and use it, and that he has recently had it partially painted. In the light of the evidence in the record, the following extract from the charge of the court is a substantial statement of the above principle in its application to the particular case: " If the defendant saw the work going on from day to day, and made no complaint to either of the plaintiffs about the lumber used or the way the work was done, and afterwards accepted the buildings without complaint, and has continued since to occupy them, has recently painted one or more of them, and still uses and occupies them, these are all circumstances to be considered by the jury as showing whether the defendant did or did not consider the contract complied with."

4. Where, in resistance to an action for the price of erecting building and furnishing materials for the same, the defendant sets up some gross and some slight defects in the work and materials, he having delayed complaining until after he had used the building for some length of time, the slight defects are to be closely scrutinized by the jury before making any deduction from the price on their account.

5. If after the builders had withdrawn, leaving the structure generally complete and the employer in possession, they being, according to the evidence, his near neighbors, and therefore easily accessible, he made no call on them to remedy or repair defects, and if he had not before spoken or complained to them of any, that circumstance may be considered by the jury as having some tendency to show that there were no defects for which they were responsible, and

that he recognized all their obligations as fully performed.

6. Where the premises upon which the building was erected is trust property belonging to the wife of the debtor, and the builders have duly recorded their mechanic's lien, just as if it were his property, the wife's ownership is, in a suit against him alone, no defense to the debt itself, or to the establishment and enforcement of the lien. If he has any interest in the premises upon which the lien can take effect, that interest is bound ; and if he has none, the judgment fixing the lien will be harmless. That judgment can not conclude the wife, or affect her title, neither she nor her trustee being a party before the court.

7. In charging the jury, the presiding judge may endeavor to reduce the controversy to the real questions of fact in dispute, and uncover the precise matters for determination. To this end, he may eliminate all undisputed points, admonishing counsel to correct him if he inadvertently states anything to be conceded which is not conceded. Thus admonished, counsel ought to interpose and request any correction which is desired, pointing out the particular statement which goes too far. The breadth of statement as to matters of fact by the presiding judge in charging the jury in this case, could probably not be upheld if in opening the charge he had not made his plan and purpose clear, both to the jury and the counsel. This he undertook to do, and did, we think ; for, as we find in the record, he used, in the very beginning of his instructions, the following language : "I shall endeavor to submit to you only the portions in dispute, assuming as true whatever is admitted by both parties, and holding myself subject to correction at the time if I mistake the counsel in what they admit to be true."

Judgment affirmed.