## MONK *et al. v.* CITY OF MOULTRIE *et al.*

1. The execution and delivery of the note to the construction company by the city, for paving and curbing its streets, was not, under the facts of this case, the creation of a debt in violation of art. 7, sec. 7, par. 1, of the constitution (Civil Code, § 6563).
2. The publication by the mayor and aldermen, after their passage, of the ordinances passed by them in reference to paving and curbing the streets of Moultrie was a compliance with the statute (Acts 1913, p. 1062) under which they were enacted.
3. The court did not err in refusing the interlocutory injunction for any of the reasons assigned.

SEPTEMBER 21, 1916.

Petition for injunction. Before Judge Thomas. Colquitt superior court. July 3, 1915.

On an interlocutory hearing of an equitable petition, from the allegations thereof and those of the answer and the agreed statement of facts upon which the case was tried, the following appeared: On February 23, 1914, the City of Moultrie had in its treasury $35,694, the proceeds of the sale of bonds amounting to $35,000, with premium of $694. These bonds had been duly authorized, under a previous election, for the purpose of paving the streets of the city. On the date mentioned the city entered into a contract with the West Construction Company, a foreign corporation, for paving and curbing certain streets to be designated by the mayor and aldermen. Pursuant to this contract the mayor and aldermen, on April 7 and 21, 1914, passed ordinances designating named streets to be paved, called the "business section," it being provided that all of the cost of the curbing and two thirds of the cost of paving should be borne by the abutting-property owners along the "business section." After the completion by the construction company of the improvements of the "business section," under the following provision of the contract above referred to, to wit: "The contractor further agrees to do any additional work that the city may require, provided that the work can be done promptly and as a continuation of the work herein and before referred to," on July 21, 1914, the mayor and aldermen passed an ordinance reciting that the construction company "having asked for more paving [they] agreed to allow the company to extend the paving" to certain designated streets known as "the loop." The total cost of paving and curbing under the contract, in both

the "business section" and "the loop," amounted to $82,600.63; "the city's portion of said entire cost was $25,575.07; the property owners' portion $57,024.74." The city had charter authority to collect the amounts due by the respective owners of abutting property, by execution for the amounts of their assessments. The city, having agreed in the contract with the construction company to make payment for the work as it progressed, had, at the time of the completion of the entire work of paving and curbing, paid to the construction company all of the $35,694, the proceeds of the sale of the bonds issued for paving purposes, and there was still a balance of $15,000 for the work done along "the loop," making the total amount due for the improvements of both sections $33,-066.07. On September 1, 1914, the city gave to the construction company its promissory note, payable to the latter's order and maturing on December 1 after date, with the privilege of renewal, if desired, for thirty days. After the execution of this note the city issued executions against the abutting-property owners along "the loop," for the collection of the assessments due by them respectively for the cost of the curbing and their proportion for the paving. The plaintiffs are residents and citizens and taxpayers of the City of Moultrie, and are abutting-property owners along "the loop," and bring this petition for themselves and any other citizen of the City of Moultrie, similarly situated, who may desire to become a party plaintiff, against the mayor and aldermen and the city marshal, to enjoin the payment by the city of the note referred to, and to have decreed null and void the contract between the city and the construction company for the improvements made, and to enjoin the levy and collection of the executions issued against them. The contentions of the plaintiffs are to the following effect: (1) The giving of the note was an effort to create a debt against the city exceeding seven per cent. of the assessed value of all the taxable property therein, and an attempt on the part of the city to incur a new debt without complying with the constitutional provisions requiring the assent of two thirds of the qualified voters of the city, expressed at an election held for the purpose of determining whether the debt should be incurred. (2) The levy and assessment and the issuance of the executions against the plaintiffs were illegal, in that the ordinances under which the same were made were not published as required by law.

*Parker, Maire & Mather,* for plaintiffs.

*L. L. Moore* and *E. K. Wilcox,* for defendants.

FISH, C. J. (After stating the foregoing facts.)

1. As to the first contention, under the facts the giving of the note by the city was not a creation of a debt falling within the constitutional prohibition relied on by the plaintiffs. The city, at the time of executing the contract for the improvements of its streets, designated by ordinances of April 7 and 21, had in its treasury cash, derived from the sale of bonds legally issued for the improvement of its streets, largely in excess of the amount required for the payment of its proportionate share of the cost of such improvements contracted for. And when the city, after expending the whole amount of such cash on hand for work on the streets as it progressed, which included one third of the cost of paving for which the city was liable and all of the cost of curbing and two thirds of the cost of paving for which the abutting-property owners were liable, gave its note for the balance due for all work done, with the expectation and the right to collect by execution the assessments due by the abutting owners, and with the special fund derived from the proceeds of the collection of such assessments, to pay off such note, the giving of the note in these circumstances was clearly not the creation of a debt against the city and illegal and unconstitutional because violative of art. 7, sec. 7, par. 1 (Civil Code of 1910, § 6563). See *Spalding County* v. *Chamberlin,* 130 *Ga.* 649 (3), 655 (61 S. E. 533); *McCord* v. *City of Jackson,* 135 *Ga.* 176 (5), 177 (69 S. E. 23); *Wilson* v. *Gaston,* 141 *Ga.* 770 (82 S. E. 136). The act of 1913 (Acts 1913, p. 1062), empowering the City of Moultrie to improve its streets, limits the liability of the city for such improvements to one third of the cost of paving; and the giving by the city of the note to the construction company, representing a portion of the balance due by the abutting-property owners to the construction company, did not make the note such an indebtedness of the city as to be violative of the provision of the constitution referred to.

2. As to the second contention, attacking the legality of the assessments against the plaintiffs as property-owners along the loop, on the ground of irregularity in the publication of the ordinances under which the streets situated thereon were improved, we hold that the same is also without merit. Section (5) of the

act of 1913 (Acts 1913, p. 1064) declares: "One publication of the ordinance or ordinances providing for the improvements mentioned in this section, in the newspaper in Colquitt County in which the sheriff's advertisements are published, shall be sufficient notice to abutting-property owners, or street-railway companies, or steam-railway companies having tracks on the streets, alleys, or ways to be improved, of the contents and provisions of such ordinances, and of the fact that such improvements are to be made." A municipal ordinance is a local law or rule prescribed by a municipal government for application within its local jurisdiction. There can be no valid ordinance until it is properly passed by the legally constituted governing departments of a municipality. The act referred to does not require the publication of a proposed ordinance, or ordinances, or notice of contemplated action thereon, but of "the ordinance or ordinances providing for the improvements mentioned," etc. It is clear from the wording of the statute that publication of the ordinances after their passage was a compliance therewith. It is equally manifest that the ordinances intended by the statute to be published are those which purport to carry into effect the intention of the city authorities to pave definite streets, specifying them, and not the publication of a general ordinance or resolution passed by the mayor and aldermen contemplating the improvement of the streets and thoroughfares of the city as a whole, providing rules and regulations for the same, an assessment-roll, etc. The purpose of publication is to notify the persons whose interests are to be affected by the assessment incident to the improvements of the streets along which the property is situate, of the intended paving and curbing by the city, and not citizens and taxpayers and the public generally of such city of the intended improvements. The right of the plaintiffs to an injunction against the collection of the assessments against them as abutting-property owners along the loop resting solely on the ground of the alleged illegal manner of publication of the ordinances providing for such assessments, it follows that only of such ordinances as are being effectuated by such assessments can they complain, and that an amendment to an ordinance providing a method of collection in installments, etc.,—of benefit to abutting-property owners,—which is not sought to be enforced against plaintiffs, can not in this proceeding be successfully attacked; and the

plaintiffs are not entitled to injunction against the collection of the assessments against them on the ground that such amendment was never published.

From what has been said it follows that the judgment refusing an interlocutory injunction should be

*Affirmed. All the Justices concur, except Gilbert, J., not presiding.*