## ALMAND v. BOARD OF DRAINAGE COMMISSIONERS.
## McELROY v. BOARD OF DRAINAGE COMMISSIONERS.

1. A drainage district laid out, established, and incorporated under the act of 1911 (Acts 1911, pp. 108-132, Park's Ann. Code, § 439 (a) et seq.) is not liable in a common-law action to one owning land within the district, for the value of his land taken, or for inconvenience im-

posed thereon by the construction of improvements after they have been completed, where the provisions of the act have been strictly complied with, and where such landowner has been served and made a party to the proceeding to establish such district, and has failed to appeal, as provided by the act, from the report of the engineer and viewers finding that his lands will not be damaged by the construction of the improvements. In such case the remedy provided in the act is exclusive.

2. The act of 1911, authorizing the establishment and incorporation of drainage districts, is referable to the police power of the State. Such districts, when established and incorporated, are governmental agencies, with limited powers conferred upon them for the public benefit, and may not be held liable for the negligent acts of their officers and agents in the discharge of a governmental function, unless made so by statute.

3. In so far as the eminent-domain power of the State is conferred upon such drainage districts, the same is merely incidental to the exercise of the powers and duties conferred and enjoined upon them for the public benefit. If, in the non-negligent and proper exercise of powers and performance of duties conferred and enjoined upon them for the public benefit, injury is necessarily inflicted upon private property which amounts to the taking or damaging of such property, within the meaning of the constitution of this State, the owners thereof are entitled to just and adequate compensation, and the drainage districts as such may be held liable. Where the injury is the result of an act of negligence of the officer or agent of such drainage district, liability as against the corporation does not exist.

No. 186.   JANUARY 16, 1918.

The Court of Appeals asked for instructions from the Supreme Court upon the following questions (Cases 8070, 8071):

"The Board of Drainage Commissioners of Haynes Creek District was duly created a body corporate under and by virtue of the provisions of the act of 1911 (Acts 1911, pp. 108 to 132, inclusive; Park's Annotated Code, §§.439 (a) et seq.). A, not a petitioner for the creation of such drainage district, owns land within the district, and is served with a summons as required by the act (Park's Annotated Code, § 439 (b)). No damage is awarded him by the engineer and the viewers; and no appeal is taken by him to their report, as provided in the act. The district is duly established in strict compliance with the provisions of the act.

"1. In such case may A prosecute his common-law action on the case for the value of his land taken, and for any inconvenience imposed, because of the construction of the improvements by the board of drainage commissioners, after the district has been established, laid out, and the improvements completed; or are the remedies provided in the act exclusive of all other remedies?

"2. In such case may A maintain against the board of drainage commissioners, as a body corporate, an action for damage for the negligent construction by the board of drainage commissioners of the improvements authorized to be made by it, where his lands lying within and without the drainage district have been damaged by acts of negligence and negligent omissions on the part of the board and its contractor in making the improvements in the district?"

*J. T. Moore, L. B. Norton,* and *E. J. Reagan,* for plaintiffs.

*I. L. Oakes,* for defendant.

GEORGE, J. 1. The act of the legislature, approved August 19, 1911, provided for the establishment of a system of drainage and the means for carrying into effect the requirements of the act. Acts 1911, p. 108; Park's Code, § 439 (a) et seq. The first section of the act provides: "The clerk of the superior court, together with the board of commissioners of roads and revenues, or, if there be no such board, with ordinary of any county of the State of Georgia, shall constitute a court to have jurisdiction, power, and authority to establish a levee or drainage district or districts in his county." By the second section of the act the court thus constituted has the power to entertain "a petition signed by a majority of the resident landowners in a proposed drainage district, or by the owners of three fifths of all the land which shall be affected by or assessed for the expense of the proposed improvements," and, after notice to all defendant landowners who have not joined in the petition and whose lands are included in the proposed drainage district, to appoint a competent civil and drainage engineer and two resident freeholders of the county or counties in which said lands are located, as a board of viewers to examine the lands described in the petition and make a preliminary report thereon. Notice by publication to any defendant landowner who can not be personally served as provided by the act is expressly provided. Section 3 of the act requires the board of viewers to proceed to examine the land described in the petition, and other land if necessary to locate properly such improvement or improvements, and to make a report to the clerk of the superior court within thirty days, unless further extension of time be granted by the court. Under section 4 of the act, "if the viewers report that the drainage is practicable and that it will benefit the public

health, or any public highway, or be conducive to the general welfare of the community, and the court shall so find, then the court shall fix a day when the report will be further heard and considered;" otherwise the petition is to be dismissed at the cost of the petitioners. In the event the petition is entertained by the court, sections 5 to 10, inclusive, provide the duties and powers of the court in regard to the further proceedings in the premises, and recognize the rights and provide the remedies of any petitioner landowner or defendant landowner in the district, other than the petitioners. The right to acquire an outlet over and through lands not affected by the drainage is also declared, and the remedy of the owner or owners of such lands provided. Section 11 is pertinent to the inquiry here presented, and is as follows: "It shall be the further duty of the engineer and viewers to assess the damages claimed by any one that is justly right and due to them for land taken or for inconvenience imposed because of the construction of the improvement, or for any other legal damages sustained. Such damage shall be considered separate and apart from any benefit the land would receive because of the proposed work, and shall be paid by the Board of Drainage Commissioners when funds shall come into their hands." Section 16 gives to any landowner the right to appear in person or by counsel and file his objections in writing to the report of the viewers; and it is made the duty of the court to carefully review the report of the viewers and the objections filed thereto, while section 17 gives to any party aggrieved the right of appeal to the superior court, to be taken and prosecuted as now provided in civil proceedings; "provided, that the right of appeal shall obtain in all cases of dispute as now provided by law, and in accordance with this act."

Confining the ruling to the precise issue involved in the first question, the act clearly contemplates damage to the land included within the drainage district, and recognizes the right of the owners thereof to have just compensation for the value of the land taken and for any inconvenience imposed thereon because of the improvements. As a general rule, if a right to compensation exists or is created by an act of the character under consideration, and no remedy is provided, a common-law action will lie. If the initiative is upon the drainage commission, and it fails to have the damage assessed, the landowner may have resort to his common-law

action for damages. Lewis on Eminent Domain, § 339; cf. also McCarthy *v.* St. Paul, 22 Minn. 527; LaFayette *v.* Wortman, 107 Ind. 404 (8 N. E. 277); Holley *v.* Torrington, 63 Conn. 426 (28 Atl. 613). Generally, if the statute provides a remedy, that is exclusive. Golding *v.* Attleborough, 172 Mass. 223 (51 N. E. 1076); Heiser *v.* New York, 104 N. Y. 68 (9 N. E. 866); Melenbacker *v.* Salamanca, 188 N. Y. 370 (80 N. E. 1090). But in this State the rule is different, and the landowner may have his election either to adopt the statutory remedy of assessment or prosecute his action at law for the recovery of damages, in the absence of express provision or necessary implication in the statute to the contrary. *City of Atlanta* v. *Hunnicutt*, 95 *Ga.* 138 (22 S. E. 130). Section 38 provides that the "provisions of this act shall be liberally construed to promote the leveeing, ditching, draining, and reclamation of wet and overflowed lands," etc.; and it concludes with the declaration that "the remedies provided for in this act shall exclude all other remedies." We therefore conclude that a landowner who has been served and made a party to the proceedings to establish a drainage district, under the act of 1911, and who has failed to have his damage assessed as provided by the act, can not prosecute his common law action for the value of his land taken, or for any inconvenience imposed thereon by the construction of the improvements, after the drainage district has been established, laid out, and the improvements completed. His remedy provided in the act is exclusive. Any other construction would be subversive of the purposes of this legislation. The whole scheme of the act is to ascertain the damages and to weigh the damages, when ascertained, against the benefits to be derived, and the damages, in so far as they involve the actual appropriation of the land or inconvenience imposed thereon by reason of the necessary and authorized improvements to be made, are to be ascertained in advance. The judgment of the court creating a drainage district under the act in question is based upon the finding that the benefits will exceed the damages; and in a case where the requirements of the act have been complied with, the damages, if any, must be ascertained in the manner prescribed in the act, and not otherwise.

2. The second question propounded by the Court of Appeals necessarily involves a consideration of the character of a drainage corporation created under the act of 1911, supra. The caption

of the act is, "An act to promote the public health, convenience, and welfare by leveeing, ditching, and draining the wet, swamp, and overflowed lands of the State, . . and for other purposes." In the body of the act (sec. 1) it is declared "that the drainage of swamps and the drainage of surface-water from agricultural lands, and the reclamation of tidal marshes, shall be considered a public benefit and conducive to the public health, convenience, utility, and welfare." The drainage district can not be laid out unless the viewers report that the drainage is practicable, and "that it will benefit the public health, or any public highway, or be conducive to the general welfare of the community," and unless the court shall so find upon examination of the report filed by the engineer and viewers (sec. 4). After a drainage district has been established as provided by the act, three persons shall be appointed who shall be designated as the board of drainage commissioners. The method of appointment and succession is provided in sec. 19 of the act. Such commissioners, when so appointed, shall be immediately created a body corporate, "with the right to hold property and convey the same, to sue and be sued, and shall possess such other powers as usually pertain to corporations. They shall organize by electing from among their number a chairman and a vice-chairman. They shall also elect a secretary, either within or without their body. The treasurer of the county in which the proceeding was instituted shall be ex-officio treasurer of such board. They shall adopt a seal, which they may alter at pleasure. They shall have and possess such powers as are herein granted" (sec. 19). The commission, as a corporation, has no capital stock, and is organized for a specific and limited purpose. Its powers are restricted to such as the legislature has deemed essential for the accomplishment of such purposes; and it is authorized to raise funds only for the specific object for which it is formed, and can do that only in the modes prescribed by the legislature. It has no funds, or power to acquire funds, with which to pay damages occasioned to the lands of its members or others by the negligent acts of its officers or agents; and there is no provision in the act, or in the general law of this State, making the commission as a corporation liable either for the misfeasance or malfeasance of its officers or agents. The duty, therefore, incumbent upon the drainage commission, "to protect the lands . .

through which its ditches passed, from inundation, was a duty of imperfect obligation, and one for the breach of which no action for damages lies against the district." Elmore *v.* Drainage Commissioners, 135 Ill. 269 (25 N. E. 1010, 25 Am. St. R. 363); see also People *v.* Reclamation Dist., 117 Cal. 114 (48 Pac. 1016); Sells *v.* Greene, 88 Fed. 129; Nutt *v.* Mills County, 61 Iowa, 754 (16 N. W. 536); Hensley *v.* Reclamation Dist., 121 Cal. 96 (53 Pac. 401). It is to be noted, however, that the doctrine announced by the Illinois court in Elmore *v.* Drainage Commissioners, supra, and repeated in Heffner *v.* Cass & Morgan Counties, 193 Ill. 439 (62 N. E. 201, 58 L. R. A. 353), was expressly limited in Bradbury *v.* Vandalia Levee &c. Dist., 236 Ill. 36 (86 N. E. 163, 19 L. R. A. (N. S.) 991, 15 Ann. Cas. 904), and in People *v.* Chicago &c. Railroad Co., 262 Ill. 492 (104 N. E. 831, L. R. A. 1915B, 486), and the limitation and restriction of the doctrine was placed upon a special provision contained in the act of the Illinois legislature, and upon the further consideration that the drainage district was not such a governmental agency as was authorized to take private property without compensation in the exercise of the police power of the State. The Illinois courts at the present time consider that the legislative authority to enact this class of laws is derived from the right of eminent domain, rather than from the police power. In Georgia, however, the particular branch of governmental power to which the power of drainage is referred is the police power. The constitutionality of the act under consideration was considered and declared in *Almand v. Pate,* 143 *Ga.* 711 (4), 717 (85 S. E. 909), where it was ruled as follows: "The statute . . contemplates the drainage of lands only in instances where it is necessary to the public welfare. It is within the police power of the State to enact such a law." In the opinion of the court by Mr. Justice Atkinson, it was said: ".The validity of the enactment rests in the police power of the State. . . It thus appears that the act is founded on the principle of public benefit." See also, in this connection, 9 R. C. L. 620; 14 Cyc. 1025; Coster *v.* Tidewater-Co., 18 N. J. Eq. 54, 68; Sanderlin *v.* Luken, 152 N. C. 738 (68 S. E. 225). Later North Carolina cases refer the power to enact such legislation, in part at least, to the eminent-domain power. See Price *v.* Goldsboro Township, 172 N. C. 84 (89 S. E. 1066, L. R. A. 1917A, 992).

The view that drainage acts are referable to the police power or general-welfare power is ably combated in 1 Lewis on Eminent Domain (3d ed.), § 284. Legislation of this class is, according to this authority, referable to the eminent-domain power. The act of this State, now under consideration, is by its terms based upon the police power to legislate for the general welfare. This court has sustained the act as a valid exercise of that power. The eminent-domain power, in so far as conferred by the act, is merely incidental and necessary to the exercise of the primary power conferred. Where the provisions of the act have been faithfully followed, the drainage district thus created must be considered as a public or quasi-public corporation exercising governmental functions. The ground of distinction between corporations which are liable for the negligent or wrongful acts of their agents or servants and those which are not is "that public involuntary quasi corporations are mere political or civil divisions of the State, created by general laws to aid in the general administration of the government, and are not so liable; while those which are liable have privileges conferred upon them at their request, which are a consideration for the duties imposed upon them. ·Drainage districts are given limited statutory powers, and seem to be generally considered to be governmental agencies. Hence the general rule controlling the liability to individuals for the negligence of their officers or agents is that no such liability attaches, unless expressly provided by statute." 9 R. C. L. 650. This view is in harmony with the well-considered opinion of this court, by Mr. Justice Hill, in *Mayor &c. of Savannah* v. *Jordan,* 142 *Ga.* 409 (83 S. E. 109, L. R. A. 1915C, 741, Ann. Cas. 1916C, 240). It also finds support in earlier and later cases decided by this court. See *Love* v. *Atlanta,* 95 *Ga.* 129 (22 S. E. 29, 51 Am. St. R. 64); *Gray* v. *Griffin,* 111 *Ga.* 361 (36 S. E. 792, 51 L. R. A. 131); *Mayor &c. of Dalton* v. *Wilson,* 118 *Ga.* 100 (44 S. E. 830, 98 Am. St. R. 101); *Watson* v. *Atlanta,* 136 *Ga.* 370 (71 S. E. 664); *Cornelisen* v. *Atlanta,* 146 *Ga.* 416 (91 S. E. 415). The general rule of nonliability above stated has no application where the duties relate to branches of municipal or corporate endeavor which are private in their nature, primarily for revenue and for the promotion of corporate welfare. The cases of *City of Atlanta* v. *Hunnicutt* supra, and *Central Georgia Power Co.* v. *Mays,* 137 *Ga.* 120 (72

S. E. 900), recognize this distinction, and are not in conflict with the ruling here made. We have not overlooked the constitutional provision that "private property shall not be taken, or damaged, for public purposes, without just and adequate compensation being first paid." Art. 1, sec. 3, par. 1, Civil Code (1910), § 6388. Although the drainage commission is a governmental agency, having for its primary purpose the exercise of a governmental function within the police power of the State, it can not take or damage private property for public purposes without first paying just and adequate compensation. It is not, however, liable for the negligence of its agents and officers in the performance of this purely governmental function, although such negligence results in injury to the private property of another, whatever may be the personal liability of such agents and officers. The liability of the drainage commission as a corporation, for injuries necessarily resulting to lands lying either within or without the district, from the proper and non-negligent construction of the improvements authorized to be made by it, is conceded to exist. But where such necessary damages arise from the making of the improvements authorized to be made by the district at the time of its creation, and such landowner has been made a party to the proceeding, he must have such damages assessed under the provisions of the act. The second question is therefore answered in the negative. It is to be noted that this question, as formulated by the Court of Appeals, does not involve the liability of the corporation for injury and damage to lands resulting from the negligent maintenance of the improvements made by the corporation, as in the case of a nuisance.

*All the Justices concur, except Fish, C. J., absent.*