## 16423. BOARD OF DRAINAGE COMMISSIONERS OF KETTLE CREEK DISTRICT *et al. v.* WILLIAMS.

1. A collateral agreement whereby certain persons become liable as sureties on a primary obligation, but which contains a stipulation by which the sureties are to be relieved upon the happening of a condition subsequent, remains binding upon the sureties until they have shown that their liability has been discharged by the happening of the condition subsequent.
2. Where the commissioners of a drainage district thus become liable as sureties to the contractor "until money can be secured by the issuing and sale of bonds of said district," advantage can not be taken of a void and illegal sale of such bonds, so as to extinguish their liability in accordance with the terms of the agreement with reference to such condition subsequent.
3. The evidence fully warranted, if it did not demand, a finding in favor of the plaintiff upon the issue of his compliance with his contract, and the trial judge did not err in overruling the demurrers to the petition, or in overruling the motion for new trial for any reason assigned.

DECIDED DECEMBER 22, 1925. REHEARING DENIED FEBRUARY 13, 1926.

Complaint; from city court of Washington—Judge Sutton. March 6, 1925.

E. M. Williams sued the Board of Drainage Commissioners of Kettle Creek Drainage District, and certain individuals, upon promissory notes given by the drainage board and indorsed by the other defendants. It appeared that the individuals named as co-defendants were members of the said board, which was organized as a corporation under an act of the General Assembly (Ga. L. 1911, p. 108). The plaintiff filed an amendment to his petition, setting up that the consideration of the notes was his performance of a certain drainage contract entered into between himself and the said board. He set forth that after the completion and acceptance of his work in accordance with the terms of the said contract, and after his compensation had become due, the board, on account

of the fact that it had not succeeded in selling its bonds and collecting therefor, executed and delivered to him the notes sued upon. It was further alleged by the plaintiff that in order to give him an added protection and security for the collection of his agreed compensation, the individual defendants had previously and in advance of the work entered into a written agreement with him "to be personally responsible for the money of the district until money can be secured by the issuing and sale of bonds of said district or until the district secures money from other sources;" and that in pursuance of that agreement they indorsed the notes sued upon.

The defendants filed both general and special demurrers, in which they contended that the notes sued upon were invalid as to the drainage board, on the ground that it was a governmental agency, and consequently could not give a valid note,—could not obligate itself to pay interest. The individual defendants contended that inasmuch as the primary obligation of the board was void for these reasons, their secondary obligation was unenforceable; and that their liability was upon a condition, and they were not liable on account of such condition. The demurrers were overruled; and exceptions were preserved pendente lite. The defendants filed pleas in which they set up that the notes were null and void and unenforceable for the reasons given above; and further pleaded a total and partial failure of consideration, and set up a certain amount of damages for which they prayed a recoupment against the plaintiff. The trial of the case resulted in a verdict against all the defendants. Their motion for a new trial was overruled; and they except to that judgment.

*A. G. Golucke, B. W. Fortson,* for plaintiffs in error.

*Norman & Norman, R. L. Cox,* contra.

JENKINS, P. J. (After stating the foregoing facts.)

1. The Board of Drainage Commissioners of Kettle Creek District, one of the defendants below, being a corporation chartered under and by virtue of an act of the General Assembly (Ga. L. 1911, p. 108), had the power under that act to enter into a contract for the drainage of the said district; and the contract was not in any wise invalid by reason of the fact that there had been no actual sale of drainage bonds; assessments for such improvements having been previously made to an amount exceeding the total amount of the drainage contract. Such assessments were in

themselves a sufficient asset with which to pay off the drainage contract. *Mayor &c. of Hogansville* v. *Planters Bank*, 147 *Ga.* 346 (94 S. E. 310) ; *Monk* v. *City of Moultrie*, 145 *Ga.* 843 (90 S. E. 71) ; *Tate* v. *City of Elberton*, 136 *Ga.* 301 (71 S. E. 420) ; *Town of Whigham* v. *Gulf Refining Co.*, 20 *Ga. App.* 427 (93 S. E. 238) ; 19 Corpus Juris, 687, 723. Where the total liability under the drainage contract was within the total amount of such assessments, the contract was not thereafter rendered invalid by reason of the fact that such assessments were not collected or enforced, or by reason of the fact that the full par value of all the drainage bonds sold did not come into the district treasury, as the act of 1911, supra, requires, or by reason of the fact that the available assets of the drainage district have been disbursed legally, or dissipated illegally. See *McCord* v. *City of Jackson*, 135 *Ga.* 176, 177 (5) (69 S. E. 23). Such subsequent conduct can not in any manner influence the validity of the prior valid contract.

2. Under the facts of the case as stated above, it is not illegal for such board or district to execute and deliver its promissory note or notes for the amount of such matured payments; and such notes, thus given, are valid and collectible; and are not violative of any provision of the act of 1911, supra, or of any provisions of the general laws of the State, governing the making of obligations. *Monk* v. *City of Moultrie*, supra; *Almand* v. *Pate*, 143 *Ga.* 711 (85 S. E. 909) ; *Tate* v. *City of Elberton, Mayor &c. of Hogansville* v. *Planters Bank, Town of Whigham* v. *Gulf Refining Co.*, supra. And it was not illegal, under the circumstances outlined, to include in the notes an obligation of the district to pay interest thereon. See Civil Code (1910), § 3434; *Hartley* v. *Nash*, 157 *Ga.* 402 (121 S. E. 295).

3. Where, under the circumstances stated, certain persons who are commissioners of a drainage district, enter into a collateral agreement with the contractor who has such work in hand and uncompleted, by the terms of which such commissioners agree "to be personally responsible for the money of the district until money can be secured by the issuing and sale of bonds of said district or until the district secures money from other sources," such collateral agreement is based upon a condition subsequent; and upon the fulfilment of the condition subsequent all liability under such agreement, ipso facto, ceases. There being in the record no contention

that money was derived from any source other than from the sale of bonds, the ruling here made will be affected by that fact alone as a fulfilment of the condition subsequent.  See Civil Code (1910), § 4224.  Accordingly, such collateral agreement remained valid and of full force and effect unless such defendant commissioners, having the burden of proof of that fact, showed that the bonds of the district had in fact been issued and sold as required by the agreement.  See Civil Code (1910), § 4301; *Reid* v. *Fain,* 134 *Ga.* 134 (68 S. E. 97).  The act of 1911, supra, provides that such drainage bonds must not be sold at less than par.  Until such a valid sale of the bonds is shown to have been made, such individual commissioners have not carried the burden, and have not shown the fulfilment of such condition subsequent, and are, therefore, still bound upon their agreement.  While it was shown that the bonds, to the aggregate amount of $40,000, par value, were issued and sold, there was testimony from one or more of such commissioners to the effect that there was a commission or expense in the selling, or, as one of the commissioners expressed it, a "rake-off," of something like $3,000, and that the most that was actually realized from the sale of such bonds was about $37,000.  "If the commissioners had agreed in good faith to pay a commission to effect a sale of the bonds, such agreement would have been illegal, as under the law it was their duty to sell the bonds for not less than their full face value; and the commissioners did not receive the par or face value thereof."  *Board of Drainage Comm'rs* v. *Arnold,* 156 *Ga.* 733, 735 (120 S. E. 310).  Since, under the ruling in the case last cited, the sale of the bonds by the commissioners was "null and void," the condition subsequent by which the personal liability of the commissioners might have been relieved has not been met; and since no valid "sale of bonds" as contemplated by the agreement has been shown, their liability continues to exist under the terms of their obligation, and until the claim of the obligee has been satisfied.  See also *Aven* v. *Beckom,* 11 *Ga.* 1, 6; 22 R. C. L. 475; 29 Cyc. 1446.

4.  Where it is provided in the contract between a drainage district and the contractor, covering certain drainage construction, that such work shall be under the supervision of the engineer of the district, and that he shall have the power to accept or reject the work, or any part thereof, the acceptance and approval of such

work by such engineer, when made in good faith and in the absence of fraud, accident, or mistake, is binding upon the drainage district. *Green* v. *Jackson,* 66 *Ga.* 250, 251 (2) ; 9 Corpus Juris, 767, 826, 777, 801. Especially is the drainage district bound when it accepts such performance and executes and thereafter delivers to the contractor the note or notes of the district in settlement of such work. *Lunsford* v. *Malsby,* 101 *Ga.* 39 (28 S. E. 496) ; and see *Harder* v. *Carter,* 97 *Ga.* 273 (23 S. E. 82) ; *American Car Co.* v. *Atlanta St. Ry. Co.,* 100 *Ga.* 254 (28 S. E. 40) ; *Edison General Electric Co.* v. *Blount,* 96 *Ga.* 272 (23 S. E. 306) ; *Stimpson Computing Scale Co.* v. *Taylor,* 4 *Ga. App.* 567 (2) (61 S. E. 1131) ; *Unitype Co.* v. *Skelton,* 11 *Ga. App.* 742 (76 S. E. 80). Moreover, the jury were authorized to find from the evidence, as a matter of fact, that the terms of the contract had been fully complied with. Where such a contract provides that the work shall be done by the contractor in accordance with certain details and specifications, mutually agreed upon, if the work is done in compliance with the terms of the agreement, the contractor is not liable for the results which may flow from the work having been so performed. *Cannon* v. *Hunt,* 116 *Ga.* 452 (42 S. E. 734) ; *Porter* v. *Wilder,* 62 *Ga.* 520 (2).

5. Defendants complain that in certain excerpts from the charge to the jury the court misstated the issues of the case and confused the jury. It is true that there were slight verbal inaccuracies in certain excerpts from the charge; but most, if not all, of these inaccuracies occurred in that part of the charge which was devoted to a reading or statement of the contents of the pleadings; and inasmuch as the pleadings were out with the jury, and as they did not really tend to mislead, they would not justify setting the verdict and judgment aside; especially so since, under the foregoing rulings, a verdict for the plaintiff was practically, if indeed not absolutely, demanded.

6. In view of the principles stated above, we do not think that there was any error in overruling the demurrers to the petition, or in the charge of the court; and there being sufficient evidence to support the verdict, which has been approved by the trial court, we find no error in its overruling of the motion for new trial.

*Judgment affirmed. Stephens and Bell, JJ., concur.*

### ON MOTION FOR REHEARING.

Counsel for plaintiffs in error have filed a motion for a rehearing in this case, insisting that the court overlooked certain portions of the record, and laws and decisions which would enforce a contrary judgment from what has been rendered in the case. We have carefully examined the motion and re-examined the record upon all the points made in the motion; but have reached the conclusion that nothing has been said therein which would properly cause us to recede from the holding originally made. The record is voluminous and somewhat confusing, but we are of the opinion that those portions about which there can be no doubt or dispute support the ruling made. We did not overlook the contentions of counsel for the plaintiff in error to the effect that the drainage board, being a governmental agency, could not execute its notes in liquidation and settlement for work done for it, which it had the legal power to contract for. Recognizing that a plaintiff suing a governmental agency must affirmatively and plainly show that the obligation assumed by such agency was within the statutory powers of the agency emphasized by the present motion, we have reviewed the amended petition, to see whether, as tested by the demurrers, it showed that the obligation here assumed was within the statutory powers inhering in this drainage board. Clearly the original petition was subject to the demurrer; but we think the facts essential to the recovery were brought into the plaintiff's pleadings by the amendment thereto. A fair interpretation of the petition as amended has led us to conclude that the plaintiff has set forth the following essential facts: that Williams was engaged by the district to do certain drainage work in and for the district; that he was to be paid a certain price for his work; that the drainage bonds for the district had not been issued and sold; that the total amount of the work contracted for and done was within the total amounts of the assessments which had been made by the district for drainage purposes; that the consideration for the notes sued upon was work which had actually been done at the time of this execution, and that they had not been paid. We know of no other essential fact required to be alleged in order to fix liability of the district.

But counsel press their contention that a governmental agency has no power under the laws of our State to issue promissory

notes. The authorities they cite relate to notes given for *borrowed money*. It might well be that if the notes here sued upon appeared to have been given for borrowed money, unless perhaps to supply a casual deficiency (assuming but not deciding that a drainage district may borrow money to supply a casual deficiency of revenue, as other governmental authorities), the notes would be void ab initio, and that no action upon them could be enforced. In *Butts County* v. *Jackson Banking Co.*, 129 *Ga.* 801 (60 S. E. 149, 15 L. R. A. (N. S.) 567, 121 Am. St. R. 244), it was held that in such a case the suit would have to be brought and maintained on quantum meruit for so much of the borrowed money as could be traced to the ultimate use and benefit of the municipal corporation. That much they must pay, not under the terms of the contract,—the notes,—but as an obligation of honor and of conscience. See also *Citizens Bank* v. *Town of Ludowici*, 24 *Ga. App.* 201 (100 S. E. 229); *Almand* v. *Board of Drainage Commissioners*, 147 *Ga.* 532 (94 S. E. 1028), cited by movant. In the instant case, however, the notes sued on were not given for borrowed money or to raise funds with which to carry on the work; but were given to the contractor doing the work, directly and in settlement of the very work which he had done under his contract. They were not given for money borrowed from Williams or anybody else. In accord with our ruling is the case of *Mayor &c. of Hogansville* v. *Planters Bank*, 147 *Ga.* 346 (94 S. E. 310), that where a municipal corporation has bought and received services or material from another, at a price within the total amount of its fiscal resources, collected or uncollected, and for purposes within the powers of the corporation, and, at the maturity of the obligation, is not able to pay therefor in cash, the giving of a note therefor is not the creation of an illegal debt for the corporation; and the note is good. It was so determined in that case, as in others of like effect, because it could not be said that the municipal corporation was giving any note for borrowed money.

As was said in the original opinion in this case, any disposition of the fiscal funds after the obligation has been assumed, by the making of the drainage contract, would not reflect any invalidity upon the notes given therefor.

It would seem to follow as a matter of course that the holding to

47

the effect that the notes were not invalid as against the district itself completely disposes of the contentions of the private sureties on the notes.

Moreover, in the motion for rehearing it was said that this court overlooked the fact that the preliminary agreement which was first made by the sureties with Williams, whereby these individuals agreed to guarantee to him the forthcoming of the money of the district from the sale of bonds, etc., was not attached to the petition so as to be tested by the demurrers aimed at the petition. Suffice it to say that while this may be true, it does not affect the result, for the appending of the preliminary agreement to become a surety was in nowise essential to the binding effect of a suretyship actually assumed by the signing of the notes. A consideration of the preliminary agreement, therefore, was not unfavorable or harmful to the movants; rather was it favorable to them, for the reason that in the preliminary agreement there was a condition operating to their advantage, not embodied in the face of the notes themselves.

The matter which has given us the gravest concern throughout the consideration of this case is this: Were these notes given for the whole of the two projects of drainage, or only in settlement of 90% of both projects? If they were given in settlement of 90% of both projects then, to our minds, our conclusions are certainly correct, for the reason that, under the terms of the contract entered into, there could be no pleading of failure of consideration of the contract when 90% of the work had been approved, under the contract, for payment. There can be no doubt of the fact that the board approved for payment 90% of both projects. In its certificate issued by the board, dated April 23, 1921, 90% of both projects was approved for payment, and settled for in cash or in notes. Furthermore, in that certificate, the board pointed out the only defects claimed with reference to the Big Kettle Creek project; and there was evidence that after the date of the certificate these defects were rectified. The certificate called attention to the fact that when these defects were cured and approved by F. M. Combs, one of the commissioners, "the work on Big Kettle Creek will be fully completed and accepted by us;" and Williams swore that he hired Combs to do this work, and that Combs did it; all of which completed the contract as to Big Kettle Creek. So that there really is no doubt but that there was

sufficient evidence of the completion of the Big Kettle Creek project. The only doubt left, therefore, is whether the notes given for Little Kettle Creek covered the whole work or only 90% thereof. If it covered only 90%, for reasons given above, the plea of failure of consideration could not affect full right of recovery thereon. The note for $3400, dated May 27, 1921, states: "This note is given for work done on Little Kettle Creek." This note, as will be seen, antedated the date of the certificate referred to, in which it was certified that the note enclosed therein, amounting to $1059.40, was for 90% of both projects. The only other note which is left of the three, antedates both of the others. This evidence thoroughly convinces us that, so far as Little Kettle Creek project is concerned, the notes in the series which pertain to that project relate to 90% of the same, and not the whole of the Little Kettle Creek project. Under the contract, when the work is approved for a 90% payment, there can thereafter be no plea of failure of consideration, in so far as that approval and the note given therefor is concerned; and such note is collectible in full, even though the remaining 10% of the work might be attacked, which does not seem to be in the case before us.

We are of the opinion that the recovery is legal and supported by sufficient evidence.

             · *Motion denied. Stephens and Bell, JJ., concur.*