## ALMAND et al. v. PATE et al.

1. Assignments of error which are not urged in the brief of counsel for the plaintiff in error will be treated as abandoned.
2. Grounds of attack upon the constitutionality of a statute, which do not point out the provision of the constitution alleged to have been violated, will not be considered.
3. The act approved August 19, 1911 (Acts 1911, p. 108), authorizing the creation of drainage districts in which lands are to be drained where necessary to the public welfare, and the appointment of commissioners, and conferring authority on them to levy assessments on the property specially benefited, to defray the cost of the improvement, does not contemplate the levy of a tax within the meaning of the constitution, and is not unconstitutional for the reasons specified in the third division of the opinion, which are predicated on the assumption that the act authorizes the levy of a tax.
4. The statute mentioned in the preceding note contemplates the drainage of lands only in instances where it is necessary to the public welfare. It is within the police power of the State to enact such a law.
5. In so far as the act mentioned in the preceding notes authorizes assessments against property specially benefited by the improvement, and after such assessments to issue bonds payable only from the proceeds of such assessments, the act does not offend the provision of the constitution restricting the power of political divisions of this State to create debts.
6. The rulings announced in the preceding notes render it unnecessary to deal with the question of estoppel.

JULY 17, 1915.

Petition for injunction. Before Judge Bell. Gwinnett superior court. August 5, 1914.

An act of the legislature was approved August 19, 1911, providing for the establishment of a system of drainage, and means for carrying into effect the requirements of the act. Acts 1911, p. 108 et seq.; Park's Code, § 439 (a), et seq. Under the provisions of the act a drainage district was established which embraced portions of two counties. Assessments were made upon the several properties to be benefited by the improvement, for the purpose of raising funds to pay the cost of making the improvement. Some of the landowners having failed to pay their assessments, bonds were issued and sold under the provisions of the act; levees and drains were constructed for the drainage of lands within the district. The commissioners were proceeding to enforce collection of the assessments, when A. J. Almand and T. O. McElroy, owners of property within the district, instituted an action against the commissioners and the tax-collector, to enjoin collection of the assessment. Nu-

merous grounds were relied on for the grant of the relief, among them being that the provisions of the act in regard to the establishment of the district and of the execution of the bonds had not been complied with, and that the act was unconstitutional. The defendant filed a demurrer and an answer. In the latter it was urged that on account of certain conduct upon the part of the plaintiffs they were "estopped from raising any question as to the legality of said act or as to the constitutionality of said act, and . . from raising any of the questions sought to be raised in their petition in this case." On an interlocutory hearing the case was submitted to the judge, without evidence, upon the following agreement, signed by the respective counsel for the parties: "It is agreed that the constitutionality of the drainage act of 1911, page 108, and the question of estoppel, under the pleadings in this case, be submitted to and passed on by the court at the present time, eliminating all other questions for the present except the constitutionality of the act and the defense of estoppel." The judge rendered a decision as follows: "This case coming on to be heard, and after hearing and considering the same, and counsel agreeing that only two questions be submitted to the court at this time, to wit, the constitutionality of the act of 1911, known as the drainage act, approved August 19, 1911, and the question of estoppel: It is ordered and adjudged by the court that said act is valid and does not violate or contravene the constitution of the United States nor the constitution of the State of Georgia, as contended by the plaintiff; and that the defendants may plead estoppel. The interlocutory injunction is denied and the restraining order heretofore granted dissolved." The plaintiffs excepted.

Section 2 of the act (Park's Code, § 439 (b)) relates to procedure for the establishment of drainage districts. It is required that application for the establishment of the drainage district be filed, and that the application describe the specific body or district of land in the county and adjoining counties in such way as to convey an intelligent idea as to the location of the land, and show that the land is subject to overflow or too wet for cultivation, and that "public benefit, or utility, or the public health, convenience, or welfare will be promoted by draining, ditching or leveeing the same, or by changing or improving the natural watercourses, and setting forth therein, as far as practicable, the starting-point, route,

and terminuses and lateral branches, if necessary, of the proposed improvement." After the filing of the application, other procedure is prescribed, in section 2 and subsequent sections, for the establishment of the district and for draining the lands in the district. In section 12 (Park's Code, § 439 (1)) it is provided: "It shall be the duty of the engineer and viewers to personally examine the land in the district and classify it with reference to the benefit it will receive from the construction of the levee, ditch, or watercourse, or other improvement. In case of drainage, the degree of wetness of the land, its proximity to the ditch or a natural outlet, and the fertility of the soil shall be considered in determining the amount of benefit it will receive by the construction of the ditch. The land benefited shall be separated in five classes. The land receiving the highest benefit shall be marked "Class A," that receiving the next highest benefit "Class B," that receiving the next highest benefit "Class C," that receiving the next highest benefit "Class D," and that receiving the smallest benefit "Class E." The holdings of any one landowner need not necessarily be all in one class; but the number of acres in each class shall be ascertained, though its boundary need not be marked on the ground or shown on the map. The total number of acres owned by one person in each class, and the total number of acres benefited, shall be determined. The total number of acres of each class in the entire district shall be obtained and presented in tabulated form. The scale of assessment upon the several classes of land returned by the engineer and viewers shall be in the ratio of five, four, three, two, and one; that is to say, as often as five mills per acre is assessed against the land in "Class A," four mills per acre shall be assessed against the land in "Class B," three mills per acre in "Class C," two mills per acre in "Class D," and one mill per acre in "Class E." This shall form the basis of the assessment of benefits to the lands for drainage." This is followed by provisions for hearings to be afforded any property owners who may not be satisfied with the classifications of their property, or who may claim that their property is not benefited by the improvement. Section 31 (Park's Code, § 439 (ee)) of the act provides: "After the classification of the land and the ratio of assessment of the different classes to be made thereon has been confirmed by the court, the drainage commissioners shall prepare an assessment-roll or drainage-tax duplicate, giving a description of

all the land in said drainage district, the name of the owner, so far as can be ascertained from the public records, and the amount of assessment against each of the several tracts of land. In preparing the assessment-roll the board shall ascertain the total costs of the improvement, including the damages awarded and to be paid to the owners of land, and all incidental expenses, and deduct therefrom any special assessment made against any railroad or highway, and the remainder shall be the amount to be borne and paid by the lands benefited. This amount shall be assessed against the several tracts of land according to the benefit received, as shown by the classification and ratio of assessment made by the viewers and confirmed by the board of drainage commissioners. This drainage-tax roll shall be made in duplicate, signed by the chairman and secretary, and one copy filed with the drainage record and the other delivered to the sheriff or other county tax-collector. There shall be appended an order to collect the said assessments, and the same shall have the force of a judgment as in the case of State and county taxes." Section 32 (Park's Code, § 439 (ff)) provides: "If the total cost of the work is less than an average of twenty-five cents per acre on all the land in the district, the assessment made against the several tracts shall be collected in one installment, by the same officer and in the same manner as State and county taxes are collected, and payable at the same time. In case the total assessment exceeds the average of twenty-five cents per acre on all lands in the district, the said board of drainage commissioners may give notice of three weeks by publication in some newspaper of general circulation in the district, if there be one, and also by posting a written or printed notice at the door of the court-house and at five conspicuous places in the drainage district, that they propose to issue bonds for the construction of said improvement, giving the amount of bonds to be issued, the rate of interest they are to bear, and the time when payable. Any landowner having lands assessed in the district and not wanting to pay interest on the bonds may, within thirty days after the publication of said notice, pay the county treasurer the full amount of his assessment, and have his land released therefrom." Section 33 (Park's Code, §§ 439 (gg), 439 (hh)) provides: "Each and every person owning land in the district, which is assessed for the construction of an improvement, who shall neglect or fail to pay the full amount of his assessment

to the county treasurer within the time specified, shall be deemed as consenting to the issuing of said drainage bonds, and in consideration of the right to pay his assessments in installments he thereby waives his right to any defense against the collection of said assessment because of an irregularity, illegality, or defect in the proceedings prior to this time, except in the case of an appeal as heretofore provided, which is not affected by this waiver. The term 'person,' as used in this act, includes any firm, company, or corporation." Section 34 (Park's Code § 439 (ii)) provides: "At the expiration of the thirty days after the publication, the board of drainage commissioners may issue bonds for the full amount of the assessment not paid in to the county treasurer, together with interest thereon, costs of collection, or incidental expenses. These bonds shall bear six per cent. interest per annum, payable annually, and shall be paid in ten annual installments. The first installment of the principal shall mature at the expiration of three years from the date of issue; and one installment each succeeding year for nine additional years. The commissioners may sell these bonds at not less than par, and devote the proceeds to the payment of the work as it progresses. In no case shall bonds be issued until the tax levy has been made to meet them as they come due. The bonds issued shall be for the exclusive use of the levee or drainage district specified on their face, and should be numbered by the board of drainage commissioners, and recorded in the drainage record, which record shall set out specifically the lands embraced in the district on which the tax has not been paid in full, and which land is assessed for the payment of the bonds issued and interest thereon. This assessment shall constitute the first and paramount lien, second only to the State and county taxes, upon the lands assessed for the payment of said bonds and the interest thereon as they become due, and shall be collected in the same manner by the same officers as the State and county taxes are collected. If any installments of principal or interest represented by said bond shall not be paid at the time and in the manner when the same shall become due and payable, and such default continue for a period of six months, the holder or holders of such bonds upon which default has been made may have a right of action against said drainage district or the board of drainage commissioners of said district, wherein the court may issue a writ of mandamus against the said drainage district,

its officers, including the tax-collector and treasurer, directing the levying of a tax or special assessment as herein provided, and the collection of same, in such sum as may be necessary to meet any unpaid installments of principal and interest and costs of action, and such other remedies as are hereby vested in the holder or holders of such bond or bonds in default as may be authorized by law; and the right of action is hereby vested in the holder or holders of such bond upon which default has been made, authorizing them to institute suit against any officer on his official bond, for failure to perform any duty imposed by the provisions of this law. The official bonds of the tax-collector and county treasurer shall be liable for the faithful performance of the duties herein assigned them. Such bonds may be increased by the board of county commissioners."

The other material facts appear in the opinion.

*L. B. Norton, J. T. Moore,* and *O. M. Duke,* for plaintiffs.

*I. L. Oakes,* for defendants.

ATKINSON, J. 1, 2. The grounds of attack upon the constitutionality of the act are set forth in the petition. Some of them are not urged in the brief of counsel for the plaintiffs in error. Under the practice in this court, these will be treated as abandoned. Others do not point out what provision of the constitution is violated. These will not be considered. *Morton* v. *Nelms,* 118 *Ga.* 786 (45 S. E. 616).

3. The act authorizes the establishment of drainage districts throughout the State, under certain circumstances, and provides for the appointment of commissioners who are clothed with authority to carry into effect the provisions of the act. Among the powers conferred was the power to levy assessments against property to be benefited by the drainage, for its pro rata amount of the cost of the improvement. Assessments of this character are radically different from ad valorem taxes, and are not taxes within the meaning of the constitution. *Hayden* v. *Atlanta,* 70 *Ga.* 817; *Speer* v. *Athens,* 85 *Ga.* 49 (11 S. E. 802, 9 L. R. A. 402); *City of Atlanta* v. *First Presbyterian Church,* 86 *Ga.* 730 (13 S. E. 252, 12 L. R. A. 852); *Georgia Railroad Co.* v. *Decatur,* 137 *Ga.* 537 (73 S. E. 830, 40 L. R. A. (N. S.) 935).

It is said that the act is unconstitutional, for the following, among other reasons: (*a*) It "is in conflict with the constitution

of the State, which provides that the taxation shall be uniform, because it is not the levy of a tax by a county, nor any municipal corporation in a county, or within any political division recognized or pointed out by the constitution of the State." (*b*) It is in violation of article 4, section 1, paragraph 1, of the constitution, which declares: "The right of taxation is a sovereign right, inalienable, indestructible, is the life of the State, and rightfully belongs to the people in all republican governments, and neither the General Assembly, nor any nor all other departments of government established by this Constitution, shall ever have the authority to irrevocably give, grant, limit, or restrain this right; and all laws, grants, contracts, and all other acts whatsoever, by said government or any department thereof, to effect any of these purposes, shall be and are hereby declared to be null and void for every purpose whatsoever; and said right of taxation shall always be under the complete control of, and revocable by, the State, notwithstanding any gift, grant, or contract whatsoever by the General Assembly." (*c*) It "is unconstitutional," because the constitution "only permits the levying and collecting by counties of a tax for 'necessary sanitation,' whereas section three of the act authorizes the assessing of the property, levying and collecting a tax or assessment, for the benefit of the public health, or any public highway, or be conducive to the general welfare of the community, whether the improvements proposed will benefit the lands sought to be benefited; all save the public health being without the purview of sanitary legislation, and without the authority to tax granted to counties by the constitution."

It will be perceived that all of these grounds of attack depend on the assumption that the act authorizes the levy of a tax within the meaning of the constitution. As the act does not authorize the levy of such a tax, it follows, without the necessity of considering other reasons urged for and against the validity of the act, that it is not subject to any of the foregoing objections.

4. It is also said that the act falls under no provision of the constitution authorizing the levy of an assessment upon private property without the consent of the landowner, and that it is in violation of article 1, section 1, paragraph 2, of the constitution, which declares: "Protection to person and property is the paramount duty of government, and shall be impartial and complete." Civil Code, § 6358. The validity of the enactment rests in the

police power of the State. By reference to section two of the act, it appears that the law is not intended to apply unless, among other things, "public benefit, or utility, or the public health, convenience, or welfare will be promoted by draining, ditching, or leveeing" the land. It thus appears that the act is founded on the principle of public benefit. Sanderlin *v.* Luken, 152 N. C. 738 (68 S. E. 225). There are decisions dealing with drainage, and with its kindred subject irrigation, which hold, in effect, that, in determining whether the improvement contemplated by the statutes is for private or public benefit, it is not absolutely necessary that the public at large should be benefited. 2 Kinney on Irrigation and Watercourses, § 1068, and citations; Lewis *v.* Gordon, 20 Wash. 805 (54 Pac. 779); Coster *v.* Tidewater Co., 18 N. J. Eq. 54; O'Reilly *v.* Kankakee Valley Drainage Co., 32 Ind. 169. If the use and benefit be common to all who are assessed, and not for particular individuals, it will be sufficient. 1 Lewis on Eminent Domain (3d ed.), § 254, and citations. These and other authorities recognize that drainage, such as is contemplated by the statute under consideration, may amount to a public benefit. Statutes of the character just referred to, for promotion of the public welfare, have been recognized as a valid exercise of the police power of the State. In Re Hegne-Hendrum Ditch No. 1, 80 Minn. 58 (82 N. W. 1094); Mound City Land Co. *v.* Miller, 170 Mo. 240 (70 S. W. 721, 60 L. R. A. 190, and notes, 94 Am. St. R. 727); Donnelly *v.* Decker, 58 Wis. 461 (17 N. W. 389, 46 Am. R. 637); Fallbrook Irr. District *v.* Bradley, 164 U. S. 112 (17 Sup. Ct. 56, 41 L. ed. 369); 10 Am. & Eng. Enc. Law, 222; Hagar *v.* Reclamation District No. 108, 111 U. S. 701 (4 Sup. Ct. 663, 28 L. ed. 569). In the case last cited it was held: "It is within the discretion of the legislature of California to prescribe a system for reclaiming swamp lands, when essential to the health and prosperity of the community, and to lay the burden of doing it upon the districts and persons benefited." We think the act under consideration was a valid exercise of the police power of the State.

5. Another attack upon the act was on the ground that it was in conflict with article 7, section 7, paragraphs 1 and 2, of the constitution (Civil Code, §§ 6563, 6564), which provide: "The debt hereafter incurred by any county, municipal corporation, or political division of this State, except as in this constitution provided

for, shall not exceed seven per centum of the assessed value of all the taxable property therein, and no such county, municipality, or division shall incur any new debt. except for a temporary loan or loans to supply casual deficiencies of revenue, not to exceed one fifth of one per centum of the assessed value of taxable property therein, without the consent of two thirds of the qualified voters thereof at an election for that purpose, to be held as may be prescribed by law; but any city, the debt of which does not exceed seven per centum of the assessed value of the taxable property at the time of the adoption of this constitution, may be authorized by law to increase, at any time, the amount of said debt, three per centum upon such assessed value." "Any county, municipal corporation, or political division of this State, which shall incur any bonded indebtedness under the provisions of this Constitution, shall, at or before the time of so doing, provide for the assessment and collection of an annual tax, sufficient in amount to pay the principal and interest of said debt within thirty years from the date of the incurring of said indebtedness." Under this ground of attack it is insisted that the statute amounted to an unauthorized attempt to empower the commissioners to issue bonds, which, in effect, without the sanction of two thirds of the voters at an election duly held, amounted to the creation of a debt. Under the terms of the drainage act, the bonds which it is provided the drainage commissioners may issue are not a general liability upon the drainage district or payable out of any general funds it may have; but they are payable solely out of assessments previously made upon property benefited by the local improvement, as provided by the act. In other words, the assessment is made upon property for a local improvement. The owners of the property have the privilege of paying the assessments within a specified time; and for the balance unpaid at that time, what are called bonds may be issued by the commissioners. But, taking the act as a whole, these bonds are only payable from the collection of the unpaid assessments; and if there is a default for a certain time in the payment of the bonds, provision is made for compelling the officers to collect such assessments so as to pay the amount of installments due. It has been held by a number of authorities that such a bond or certificate, so payable, does not constitute an indebtedness against the political division, within the meaning of clauses of State constitutions quite similar

to our own. It has sometimes been suggested that the issuance of such bonds amounted to a quasi assignment of the assessment or its proceeds to the extent necessary for payment. Sometimes what is called the special-fund doctrine has been invoked,—a doctrine, however, which one or two courts have carried so far as practically to render ineffectual the constitutional limitation. It might be suggested that, under the terms of the act before us, the drainage commissioners do not possess property derived from various sources, or levy general taxes, but stand in a peculiar relation to the bond-holder, which might be analogized to that of agents in the collection of the assessments and payment of the bonds from only the one source from which they are payable.

In view of the terms of the act and the construction we have given to it, we are of the opinion that it does not violate the clause of the constitution which prohibits municipal corporations, counties, or political divisions of the State from incurring an indebtedness without an election first being held therefor. Gray on Limitations of Taxing Power, §§ 2101-2109, and citations; 2 Dillon on Municipal Corporations (5th ed.), §§ 893, 827; Sanderlin *v.* Luken, supra; Elliott *v.* McCrea, 23 Idaho, 524 (130 Pac. 735).

The case differs from the class of cases in which a municipality assumes a general and primary liability to pay the cost of the improvement, among which cases are *Sanders* v. *Gainesville,* 141 *Ga.* 441 (81 S. E. 215); Martin *v.* Tyler, 4 N. D. 278 (60 N. W. 392, 25 L. R. A. 838); McAleer *v.* Seattle, 2 Wash. 653 (27 Pac. 557); City of Ottumwa *v.* City Water Supply Co., 119 Fed. 315 (59 L. R. A. 604, 56 C. C. A. 219).

6. Having held that the grounds of attack upon the constitutionality of the act are not meritorious, it is unnecessary to deal with the question of estoppel, which was submitted to the trial judge for decision. The statute being authority for the collection of the assessments which it was sought to enjoin, it was not erroneous for the judge to refuse to grant the interlocutory injunction.

*Judgment affirmed. All the Justices concur.*