## CITY OF WAYCROSS *et al.* v. TOMBERLIN *et al.*

ATKINSON, J. By section 35 of the new charter of the City of Waycross (Acts 1909, p. 1456) it was provided, among other things, that the city should have "power to levy an ad valorem tax, not to exceed one per cent. on all the property, real and personal, within the corporate limits . . which is taxable under the laws of the State, for the purpose of supporting and maintaining and bearing the general expenses of said city government." In section 20 of the same act power was conferred to pave streets, etc. The provision for payment of the cost thereof was, "to charge, assess, and collect . . as provided by the act of the General Assembly of Georgia, amending the charter of the City of Waycross, approved the 22nd day of August, 1905, providing

for paving and improving the streets, alleys, sidewalks, etc., in said city, and assessing the cost thereof, etc." Acts of 1905, p. 1220. In the act last mentioned was a provision for the cost of paving streets by assessment against abutting property in the proportion of one third to each side of the street payed; and in streets in which were tracks of street-railroad companies or other railroad companies the assessment for the cost of paving "the width of its track and for one foot on each side thereof" should be against such railroad property. In section 30 of the acts of 1909, supra, authority was given to issue bonds for any of the following purposes: building and equipping school buildings, extending and improving waterworks and sewerage system, "paving, macadamizing, repairing, repaving, and improving the public streets," building and operating electric-light power plants, gas plants, and street-railway system, and other public utilities, including auditoriums and armories. It was provided, however, that before any bonds should issue for any of the purposes mentioned, the question of issue of bonds should be submitted to a vote of the people and be approved by at least two thirds of the qualified voters of the city. Otherwise than as stated, there was no provision expressed in any of the acts mentioned relative to the city paying the proportion of the cost of paving a street that would be left after exhausting the assessment against abutting property, or provision for the city to raise funds with which to pay any portion of the cost of paving. *Held:*

1. Under a proper construction of section 20 of the new charter, the municipality was given power to pave streets. The manner provided for paying for the improvement was by assessments against abutting property, and, in instances where railroad-tracks occupied the streets, against such railroad property, and any balance to be otherwise provided for.

2. When considering the provisions of the charter in its entirety, the power to levy a general ad valorem tax "for the purpose of supporting and maintaining and bearing the general expenses of said city government" was sufficiently broad to comprehend paving of streets as one of the general expenses of the municipality.

  (*a*) A different construction is not required on account of the provision for incurring bonded indebtedness for street-paving and other purposes after the issue of bonds has been sanctioned by two thirds of the voters of the city at an election at which the question has been submitted. The municipality has a discretion to pave streets without creating a debt, when it can lawfully do so, notwithstanding its power to incur bonded indebtedness for such purpose.

  (*b*) Where there is a levy of an ad valorem tax and it is recited in the levy that it is made for the purpose of paving specified streets, the tax thus imposed is for a "general expense" within the meaning of section 35 of the charter, and its character is not changed by terming it an "extraordinary levy."

3. The authority in section 35 of the charter, during any year, to levy an ad valorem tax of one per cent. (10 mills) on all taxable property in the city for the "general expense," was not exhausted for a given year

by the levy of five mills to be appropriated to specified proper purposes; and it was competent in the same levy to include a separate item of three mills specified to be for the purpose of paving designated streets of the city.

4. The provisions of the Civil Code, §§ 864 and 865, embodying the act of 1874 (Acts 1874, p. 110), restricting the power of municipalities in regard to the amount of ad valorem tax that could be levied for current expenses, and defining "ordinary expenses," do not affect the provision in the new charter of the City of Waycross, adopted in 1905, authorizing the levy of an ad valorem tax for such purpose to an amount greater than that specified in those sections of the code. *City of Cochran* v. *Lanfair*, 139 *Ga.* 249 (77 S. E. 95).

5. A liability for a legitimate current expense may be incurred by a municipality without creating a debt within the meaning of art. 7, sec. 7, par. 1, of the constitution of this State (Civil Code, § 6563), provided there be, at the time of incurring the liability, a sufficient sum in the treasury which may be lawfully used to pay the liability incurred, or if a sufficient sum to discharge the liability can be raised by taxation during the current year. *Tate* v. *City of Elberton*, 136 *Ga.* 301 (71 S. E. 420); *City of Dawson* v. *Waterworks Co.*, 106 *Ga.* 696 (32 S. E. 907).

(a) The principle just announced is also applicable where the money to satisfy the liability is provided for by the lawful assessment of property by the municipality to pay the cost of paving a street for which the liability was incurred. *Monk* v. *Moultrie*, 145 *Ga.* 845: *Almand* v. *Pate*, 143 *Ga.* 711 (5), 718 (85 S. E. 909).

(b) The city having, under its charter, made valid assessments against abutting lots for portions of the cost of paving the streets, and levied a valid ad valorem tax on all the taxable property in the city to cover the balance of the cost, and upon the basis of such assessments and levy having made a contract for the pavement to be done during the current year and paid for when completed, the liability incurred by the city in making the contract did not amount to a debt within the meaning of art. 7, sec. 7, par. 1, of the constitution of this State (Civil Code, § 6563), limiting the power of municipal bodies to create debts. This provision of the constitution does not operate as a limitation upon the taxing power of a municipality. *Commissioners of Habersham Co.* v. *Porter Mfg. Co.*, 103 *Ga.* 613 (30 S. E. 547).

(c) The case differs on its facts from *Sanders* v. *Mayor etc. of Gainesville*, 141 *Ga.* 441 (81 S. E. 215), in which an assessment against property was resisted on the ground that the contract to do the paving for which the assessment was made was illegal, because the cost to be paid by the city extended over a series of years, and no provision for its payment was made in advance.

6. As a debt within the meaning of the constitution was not created, the question of the municipality creating a new debt without submitting the question to a vote of the people, or of exceeding the constitutional limit of indebtedness which the municipality could incur, was not involved in the case.

7. Under the pleadings and evidence, it was erroneous to enjoin enforcement of the paving ordinance, collection of the tax, and performance of the contract for paving the streets.

*Judgment reversed. All the Justices concur.*

FEBRUARY 15, 1917.

Injunction. Before Judge Summerall. Ware superior court. July 12, 1916.

*A. B. Estes, J. S. Walker, C. L. Redding, W. J. Summerall,* and *D. T. Deen,* for plaintiffs in error.

*Parks & Reed* and *Wilson & Bennett,* contra.