## MAYOR &c. OF WASHINGTON *v.* FAVER *et al.*

1. The mayor and council of the City of Washington have full authority, in their discretion, to pave the streets of that city, and to assess one half of the cost thereof against the property abutting on such streets.

2. The mayor and council, being expressly authorized by the charter of the city to pave its streets, have in this respect the power to make all contracts which natural persons could make to accomplish this purpose.

3. The city council was not required to make a direct contract with some one for such paving, but could make a contract with another by which the latter was to contract for the paving of its streets.

4. Where a contract between a county and a city, by which the former was to pave certain streets of the latter (such streets being links in interconnecting county-seat roads), and the city was to pay for such paving with funds derived from the Federal government and assessments levied upon property abutting upon such streets, was based upon a resolution which stated that certain roads, of which such streets were parts, ran through the city, that the city was desirous of having permanent pavements laid upon the unpaved portions of said roads or streets, that the county would probably obtain Federal aid for the pavement of said highways, that, in order to aid the county in procuring such aid and to assist in getting permanent pavements on such highways, the mayor and council authorized the county to act as agent of the mayor and council in making a contract with the State Highway Department to procure the permanent pavements of said roads within the city limits, and that the mayor and council agreed to appropriate the sum of $25,000 for this purpose, to be paid out of assessments on abutting property along said roads within the city limits, and that in case said assessments were not sufficient the balance was to be paid out of the general funds of the city to be raised during the year, said contract is not illegal and void because the mayor and council did not themselves lay or contract to lay said pavement, and because it amounted to a delegation of the legislative authority of the city to the county, the State Highway Department and· the Federal government, no such delegation of legislative and official discretion appearing from said resolution and contract.

5. The contract between the city and the county was not ultra vires.

6. Where a city contracts with a county for the pavement of certain of its streets, the same being links in interconnecting county-seat roads, one half of the cost of which is to be paid for with funds to be furnished by the general government through the State Highway Department, and the other half to be paid for by assessments on property abutting upon such streets, the city agreeing to pay any balance of this half of such cost not obtainable from such assessments from the general funds of the city to be raised during the year,

this does not amount to the creation of a debt in violation of art. 7, sec. 7, par. 1, of the constitution of this State.

7. The court erred in not sustaining the demurrer to the position.

No. 3504. MAY 21, 1923.

Injunction. Before Judge Shurley. Wilkes superior court. November 6, 1922.

Plaintiffs filed their petition for injunction and cancellation against the Mayor and Council of Washington, and made this case: The mayor and council have levied and threaten to enforce against them and their property certain assessments for paving portions of Alexander Avenue and Main Street within the city limits of Washington. Said mayor and council, at the time of laying said paving, had no valid contract with any person, firm, or corporation, under which they could levy such assessments. The only form of contract between the mayor and council and any one with reference to said pavement is a resolution passed by them on March 14, 1919, which states that the Lexington and Augusta roads run through this city, parts of which have been paved with asphalt on a concrete base; that parts thereof are not of a permanent type of road; that the city is desirous of having a permanent pavement on the unpaved portions of said roads within the city limits; that the County of Wilkes will probably obtain Federal aid for the pavement of said highways, the same being county-seat roads, running into and through said city; that, in order to aid the county in procuring said aid and to assist in getting a permanent pavement placed on said roads, the mayor and council authorize and empower the county, through its proper authorities, to act as the agent of the mayor and council in making a contract with the State Highway Department to procure the permanent pavement of said roads within the city limits, and of one mile of road to Ficklen and one mile of road to Tignall, within the city limits, these two latter roads being also county-seat roads; that the mayor and council do agree to appropriate a sum up to $25,000 for this purpose, to be paid out of assessments on adjacent property of owners along said roads within the city limits, and in case such assessments are not sufficient to pay said sum, then the balance is to be paid out of the general funds of the city, raised during 1919; that, in case the Federal government will consider only the pavement of the Lexington and Augusta roads, said sum is to be reduced to $12,500, or to such amount as the

councilmen named may see fit to make; that this resolution be spread upon the minutes of the city; and that two named council-men are authorized to make and sign any agreement that may be necessary to put this resolution into effect.

Said resolution was and is illegal and void, and is not a basis for the levy of said assessments, because it did not amount to a legal contract between the mayor and council and the person, firm, or corporation laying said pavement, and is not a legal basis for determining the cost of said pavement; nor for determining the amount to be levied against any one of the persons against whose property said assessments are sought to be levied. Said resolution and said alleged contract are void, because said mayor and council did not themselves lay or contract to lay said pave-ment, but sought to delegate to the County of Wilkes, the State Highway Department, and the Federal government the determi-nation of what character of pavement should be laid, what grades on said streets should be established, what sums should be ex-pended in laying said pavement, on what terms and conditions said pavement should be laid, and what sums should be charged against plaintiffs, as will appear from the advertisement for sealed proposals for this work and the contract under which said pavement was laid, copies of which are attached to the petition. All of said acts are legislative and exclusively within the dis-cretion of the mayor and council, and of such a character that they could not be delegated to any person for determination; and for this reason said resolution, which undertook to delegate the de-termination of these matters or two members of council, is void. Said advertisement gave notice that sealed proposals would be received by the board of commissioners of roads and revenues of Wilkes County, at the court-house at Washington, Ga., on Sept. 2, 1919, for furnishing all labor, material, equipment, and other things necessary for the construction of 3.327 miles of paved road "in and near Washington, Georgia, and in Tignall, Georgia, on what is locally known as the Athens and Augusta Highway and the Washington and Elberton road, same being Georgia Federal Aid projects Nos. 61, 62, 63." Then follows a description of the work to be done and the character of the material to be used. The work was to begin on Sept. 25, 1919, and be completed on or before Feb. 28, 1920. The advertisement stated that plans and

specifications were on file at the office of the board at Washington, Ga., at the office of the State Highway engineer, Atlanta, Ga., and at the office of H. S. Jaudon Engineering Co., at Elberton, Ga., where same could be inspected free of charge, and that copies could be had from the engineering company upon payment of $1 to cover cost. The advertisement further stated the terms on which the county would pay for the work, that proposals must be submitted on regular forms which would be supplied by the commissioners, that bond would be required of the successful bidder; and the right to reject bids was reserved. This advertisement was signed by the board of commissioners of roads and revenues by its chairman.

The contract for the laying of this pavement was dated Sept. 11, 1919, and was entered into between the County of Wilkes and the Smith Construction Co. The latter was to furnish all material, perform all work in construction of Federal Aid projects 61, 62, 63, Wilkes County, Georgia, in accordance with the provisions of the contract proposal inviting sealed bids for this work and the plans and specifications prepared by the State Highway engineer. The county agreed to pay the contractor for this work, when completed in accordance with the terms of the contract, $84,646.58, to be made as provided in the specifications. The work was to be done in accordance with the laws of the State, under the direct supervision and to the entire satisfaction of the State Highway Department, subject at all times to the inspection and approval of the Secretary of Agriculture, and in accordance with the rules made pursuant to the act of Congress providing for aid to the States in the construction of rural post-roads. The decision of the State Highway engineer on any question connected with the execution of this agreement or failure in laying the projects by the contractor was to be final. At the time the mayor and council undertook to create the debt claimed to exist by reason of all said paving, they did not have in their treasury any funds with which to pay therefor, and they did not have authority within the year to levy a tax with which to pay the same. Many persons are charged with assessments for said pavement, and are interested in this proceeding, which is brought for the purpose of avoiding multiplicity of suits by individuals against the mayor

and council, on the ground that the entire levy is void. Said assessments create a cloud upon the title to the lands of plaintiffs. They pray that the mayor and council be enjoined from collecting said assessments, and that the same be cancelled as clouds upon their titles. By an amendment the plaintiffs alleged that the contract between Wilkes County and the Smith Construction Company, under which said pavement was laid, is void, because the county was without authority to act as the agent of the Mayor and Council of Washington or any other person in this matter. There was no authority of law for the expenditure by the county of its funds for laying pavement within the city limits of Washington, and the laying of said pavement was ultra vires and void. To legalize the assessments sought to be enforced there should exist a valid contract between the Mayor and Council of Washington and the contractor laying said pavement; and plaintiffs allege that no such contract existed, because the contractor did not execute and deliver to the Mayor and Council of Washington a bond for their protection, as provided in the act of 1916. No valid contract existed for the laying of said pavement, which could be used as a basis for levying said assessments.

The defendants demurred to the petition as amended, upon the grounds, (1) that there was no cause of action set forth therein; (2) that plaintiffs have an adequate remedy at law; and (3) that the petition sets forth no valid reason why said assessments should not be levied and collected. The court overruled the demurrer, and error was assigned upon this judgment. The case was submitted to the judge, without the intervention of a jury, to pass upon all questions of law and fact; and after hearing evidence, the court rendered a decree enjoining the enforcement of the assessments and cancelling the same as clouds upon the titles of plaintiffs. Exception was taken to this decree.

*I. T. Irvin Jr., Colley & Colley,* and *Clement E. Sutton,* for plaintiff in error.

*William Wynne* and *W. A. Slaton,* contra.

HINES, J. (After stating the foregoing facts.)

1. The Mayor and Council of Washington have full authority and power, in their discretion, to pave and otherwise improve the streets of that city, and to assess one half of the cost thereof against the property on each side of the street so paved or im-

proved. They are expressly authorized to do this by contract. Acts 1907, p. 967. In the exercise of this power, and in order to obtain Federal aid to the extent of one half of the cost of these improvements, which the Federal government would not advance directly to the city, but would furnish through the State Highway Department, the mayor and council passed the resolution of March 14, 1919. In pursuance of this resolution, the County of Wilkes entered into a contract with a construction company for the laying of this pavement in accordance with specifications prepared and approved by the Highway Department. Under this contract the pavement was laid. The mayor and council then levied assessments against the lands abutting on these portions of the streets so paved, and were proceeding to enforce the collection of these assessments. Plaintiffs, who were owners of abutting lots, sought to enjoin the enforcement of these assessments, on the grounds, first, that under its charter the City of Washington can only levy assessments for paving its streets when it does the work itself, or when it has it done under legal contract, the terms of which are prescribed by the common council, and the city retains the right to supervise the work and accept or reject the same for non-compliance with the terms of the agreement, the mayor and council of the city being the agents of the property owners, who have no right to pass upon the work, but are bound by the action of the city council in the premises, when acting within its charter power; and second, because the contract for the pavement of these streets was void, because the city, at the time it was made, had no funds on hand with which to pay for these improvements, and did not have authority to levy a tax within the year to pay therefor.

The Mayor and Council of Washington, being expressly authorized by its charter, in their discretion to pave its streets, have, in this respect, the power to make all contracts which natural persons could make. 6 McQuillin Mun. Corp. 2573, § 1167. A municipal corporation, unless restricted by its charter, has power to enter into any necessary contract for the accomplishment of a corporate purpose. *Pullman v. City of New York,* 54 Barb. 169; 28 Cyc. 635. Being empowered to pave and to contract for paving the streets of this city, such power necessarily implies the right to do all things which may be required for the proper execution of such power. *Mayor &c. of Americus v. Eldridge,* 64 *Ga.* 524 (37

Am. R. 89). We do not think that the city council would have to make a direct contract with some one for such paving. Being authorized to make all proper contracts for this purpose, the city council can make indirect contracts for the accomplishment of this purpose. They could make a contract to do the paving, and such a contract would be valid under their general powers to contract for the pavement of the streets of that city. We see no valid reason why the City of Washington could not make an arrangement with the State Highway Department and the commissioners of Wilkes County, whereby the county could contract for doing this paving, and be paid therefor with Federal funds advanced for that purpose and out of assessments to be levied by the city under its charter power to pave its streets and levy one half of the cost against the lots of abutting owners. We do not think that this resolution and the contract between the city and county, based thereon, were void because they rest upon the delegation by the city council of their legislative authority and of their official discretion in this matter to two of the city's councilmen, and to the County of Wilkes. The determination to pave these streets was legislative in character. This involved official discretion. The city council could not delegate this power and this discretion to two of its members or to the county; but when the city council had decided to pave these streets, then they could delegate the making and the execution of any necessary agreement for this paving to a committee composed of councilmen. The making of the contract for the paving was a ministerial act which a committee of council could be empowered to perform. 1 Page & Jones Taxation, 754, § 494; 1 McQuillin Mun. Corp. 852, § 387. Furthermore it is not expressly alleged that the city did not approve the character of pavement and all the terms and stipulations embraced in the contract between the city and the county for the paving of these streets, and that the city did not supervise the construction of these pavements.

Again, it is urgently pressed that the contract between the county and the contractor to do this pavement is ultra vires so far as the county is concerned; and in consequence of this fact, it is illegal and can not be the basis of assessments against lots abutting on these streets. This court has held, that, if a contract for the construction of a public improvement is let, and an assessment

is levied to pay the contract price, the validity of such contract is essential to the validity of the assessment (*Sanders* v. *Gainesville,* 141 *Ga.* 441, 81 S. E. 215) ; but we do not think that the contract between the county and the contractor for the laying of this paving was ultra vires, and for this reason void.   Under the broad powers conferred upon the State Highway Department and the county commissioners, under the act (Acts 1919, p. 242) creating that department, that department, the county commissioners and the city were authorized to enter into the arrangement by which the county was to pave these streets, which were links in interconnecting county-seat roads, and by which the city was to pay the county with money furnished by the Federal government, and raised by assessments upon lots abutting on these streets.   Under this act the State Highway Department, in co-operation with the county commissioners, can build these State-aid roads through the City of Washington.   *Lee County* v. *Smithville,* 154 *Ga.* 550 (115 S. E. 107).   It follows that these authorities can join with the city in improving and paving its streets, which form links in these roads, to secure the same end, when by so doing the city procures the paving of its streets, secures half of the cost of such improvements from the general government, thus lifts half of the burden of such paving from the shoulders of the municipal taxpayers. and at the same time the county is at no expense.   Such tripartite arrangement between the State Highway Department, the county, and the city is not illegal and void because the county acts ultra vires in making the contract with another to do such paving.

2. It is urged that the contract between the city and the county is illegal and void, because at the time the mayor and council undertook to create the debt for the construction of this paving the city did not have in its treasury any funds with which to pay for this work, and did not have any authority to levy within the year a tax with which to discharge this obligation.   When the city had made arrangements to get from the general government, through the county commissioners and the State Highway Department, one half of the cost of this paving, and had passed a resolution, pledging the funds to be raised from assessments against the property abutting on the streets to be paved, to the payment of the other half of the costs of such improvement, and therein agreeing to pay any difference between half of such costs and the

total of such funds realized from such assessments, this arrangement did not amount to the creation of a debt in violation of art. 7, sec. 7, par. 1, of the constitution of this State. Civil Code (1910), § 6563; *Monk* v. *Moultrie,* 145 *Ga.* 843 (90 S. E. 71); *City of Waycross* v. *Tomberlin,* 146 *Ga.* 504 (91 S. E. 560); *Almand* v. *Pate,* 143 *Ga.* 711 (85 S. E. 909). An obligation for paving streets, payable when the work is done, is a current expense, and a liability therefor is not the creation of a debt within the meaning of the above provision of the constitution; provided, at the time of incurring such liability, the city had in its treasury a sufficient sum which could be lawfully applied to the payment of such liability, or if a sufficient sum to discharge the liability could be raised by taxation during the current year. *City of Dawson* v. *Waterworks Co.,* 106 *Ga.* 696 (32 S. E. 907); *Tate* v. *Elberton,* 136 *Ga.* 301 (71 S. E. 420); *City of Waycross* v. *Tomberlin,* supra, The same principle is likewise applicable when the money to pay such liability has been provided for by the lawful assessment of property by the city to pay the costs of paving streets before the liability was incurred. *Almand* v. *Pate, Monk* v. *Moultrie, Waycross* v. *Tomberlin,* supra. There is an allegation in the petition that the city did not have authority to levy a tax during the year for this purpose, but no facts are stated and no reasons given to support this allegation; and the same is a mere conclusion of the pleader.

3. Applying the above rulings, the petition did not set forth a cause of action, and the court erred in not sustaining the demurrer and dismissing the action. This renders it unnecessary to consider any subsequent errors alleged to have been committed on the trial of the case. *Judgment reversed. All the Justices concur.*