JACKSON *et al. v.* CITY OF ROME.

No. 11255.   July 2, 1936.

*Maddox & Griffin* and *Wright & Covington,* for plaintiffs.

*W. B. Mebane* and *Maddox, Matthews & Owens,* for defendant.

Beck, Presiding Justice.   John H. Jackson et al., as citizens and taxpayers, brought suit against the City of Rome, seeking to restrain and enjoin the defendant from performing a contract made between the State Highway Board of Georgia and the defendant and from expending any of the public funds of the city for the purchase of a right of way and for the payment of consequential and direct damages to all parties involved, by reason of the construction of a State highway through the city.   The contract or resolution of the mayor and council, the carrying out of which the petitioners seek to have enjoined, is as follows:

"Georgia, Floyd County.   Whereas the State Highway Department and the County of Floyd desire to construct a road between Rome and Summerville and known as Federal Aid project No. N. R. M. 96C for Federal routes 12 and 17.   And whereas the project will extend within the corporate limits of the municipality, town or city of Rome:   It is resolved that we the Mayor

and members of the Council (or other officer or officers) charged with the management of the finances of said municipality hereby guarantee to the State Highway Department of Georgia and the County of Floyd any and all rights of way that may in the opinion of the State Highway Department of Georgia be necessary to the proper construction of the above named project according to survey as made by engineers of the State Highway Department within the incorporate limits of said municipality, the same being between survey stakes 9 plus 23.7 and 56 plus 65 and a width of 60 feet for a roadway with such additional width for slopes as may be required as shown in plans providing for project. We further agree to defend any and all suits, if any should arise, at the entire expense of the town and to pay from funds of the town or municipality any and all awards and judgments that may be made or had under or as a result of such suits. We further agree to save harmless the State Highway Department and the County, of Floyd from any and all claims for any damages whatsoever that may arise prior to beginning or during construction of the project or at any time in the future after the completion of same whether said damages arise as a result of appropriation of said rights of way within said municipality by the State Highway Department or the County of Floyd, or construction on said right of way, or drainage changed by grade, change of location or any cause whatever. We further agree that we will not allow any new structure to be built within the limits and lines of the right of way above described or allow any rebuilding of existing structures. It is agreed that any existing structures within this right of way which do not interfere with the construction of the highway or a free flow of traffic will be allowed to remain for a limit of not to exceed 5 years, and we agree that all structures at present within this right of way will be removed without cost to the State before the expiration of 5 years. It is further agreed that the said City of Rome will not erect any traffic signals, towers or lights on the said right of way without written consent of the State Highway Board of Georgia. S. L. Sammons, Deputy Clerk."

It was alleged that such purchase of such rights of way was illegal, for the following reasons: (a) The money expended thereon would be a gift in violation of the provisions of article 7, section 6, paragraph 1, of the constitution of the State of Geor-

gia. (b) That portion of the contract agreeing and contracting to defend any and all suits brought and to pay all judgments rendered by reason of the construction of such highway was a pledge of the credit of the City of Rome to the State Highway Department in violation of the provisions of article 7, section 6, paragraph 1, of the constitution of the State of Georgia. (c) Under the charter of the City of Rome, it had no right to levy and collect taxes for such purposes. (d) The City of Rome being unable to collect taxes for the purposes prescribed in such contract, said contract was ultra vires, null and void. (e) There was no charter power to make such contract. (f) The charter of the City of Rome did not authorize the State Highway Department of Georgia to lay out streets, in violation of the provisions of section 76 of the charter of the City of Rome (Ga. L. 1918, p. 853), without any accompanying resolution authorizing the same. (g) The City of Rome, under the act of the General Assembly approved March 26, 1935 (Ga. L. 1935, pp. 160, 161), had no authority to contract to pay for the rights of way for such road, or the consequential damages incident thereto, but such obligations were solely the obligations of the county, to be paid for by the County of Floyd.

The defendant answered, denying the material allegations of the petition, except that the contract with the highway board had been made as alleged, and that they were contemplating building the road through the City of Rome as described therein; and setting forth various benefits that would accrue to the city and surrounding territory by reason of the performance of such contract and the construction of such road.

On the trial evidence was introduced to the effect that in 1935 the city made its budget estimating the expenses of the city for the year for the various purposes authorized by the charter, and there was left from this budget unexpended, on November 30, 1935, the sum of $41,198; that it had outstanding and unpaid warrants in certain sums named, and various other items of expense, set out in detail; that it had cash on hand and other items of taxes and other income, all of which were itemized, which would leave it with cash resources of the sum of approximately $138,-507.47, out of which it had made or would make expenditures of $59,988.46, leaving the estimated sum of $78,519 available to be

applied for any other uses. It was testified that the estimate of the cost of the rights of way for the highway referred to in the petition would be approximately the sum of $18,000. The court refused to grant an injunction, and the plaintiffs excepted.

■ One of the questions for determination is, has the City of Rome the right, under article 7, section 6, paragraph 1, of the constitution, to expend any of its funds for the purpose of purchasing rights of way within the city limits for the State Highway Department? If the purpose of the project is for the improvement of the streets of the City of Rome, and thereby to procure work done on its street of the value of $60,000, and without any expense to it except in providing for the rights of way, we are of the opinion that the city can pay for these rights of way, and that it is immaterial whether the title to the rights of way is taken in the name of the City of Rome or of the State Highway Department. The evidence shows that this project for the improvement of these streets was laid out by the State Highway Department, and approved by the engineers of the Federal Government at the request of the City of Rome. The resolution set forth above is an adoption of that project by the city, and an agreement that it will pay for the necessary rights of way in order to secure the improvement of its streets. Any conveyances to the highway board in connection with this project would necessarily be for the use and benefit of the city. Article 7, section 6, paragraph 1, of the constitution of Georgia is as follows: "The General Assembly shall not authorize any county, municipal corporation, or political division of this State to become a stockholder in any company, corporation, or association, or to appropriate money for, or to loan its credit to any corporation, company, association, institution, or individual, except for purely charitable purposes. This restriction shall not operate to prevent the support of schools by municipal corporations within their respective limits; provided that if any municipal corporation shall offer to the State any property for locating or building a capitol, and the State accepts such offer, the corporation may comply with such offer." It is contended by the plaintiffs that the action of the City of Rome in purchasing the necessary rights of way for the improvement of these streets and taking conveyances thereto in the name of the State Highway Board violates this provision of the constitution, in that the same

"amounts to and is an appropriation of money for the use of the said Highway Board of the State of Georgia." The evidence disproves any such contention of fact; on the contrary it shows that the expenditure for said rights of way is for the use and benefit of the City of Rome in securing from the highway board $60,000 of Federal funds for the improvement of its streets. The highway board is simply co-operating with the city in providing street and highway facilities within the corporate limits of the city. As applied to streets within the corporate limits of the city, the functions of and purposes for which the State Highway Board was created are the same as conferred upon the City of Rome by its charter. These functions and purposes are to provide proper and adequate street and highway facilities. As we have said, the State Highway Board is merely co-operating with the city in improving its streets. Whether the title to the rights of way for these streets be in the City of Rome or in the State Highway Board is immaterial. The effect is the same. Under the resolution the city authorities merely guarantee to the State Highway Department of Georgia and the County of Floyd any and all rights of way that may, in the opinion of the State Highway Department, be necessary to the proper construction of the project according to survey as made by the engineers of the State Highway Department within the corporate limits of the municipality. The right to the strip of land is merely for the purpose of constructing the highway there upon this land. The City of Rome thereby gets $60,000 expended upon its streets in a highly important and necessary improvement, and its citizens enjoy the use and benefit thereof; and this does not fall within the prohibition of the constitutional provision cited.

■ The ruling in headnote 2 requires no elaboration.

■ Another contention of the plaintiffs is that under its charter the City of Rome has no right or power to levy and collect taxes for the purpose of paying for a right of way for the State Highway Department for roads through that city. We are of the opinion that this contention does not raise any valid objection to the contract under consideration. While the conveyances of the rights of way may be taken in the name of the State Highway Board, the purpose thereof is for the benefit of the city in improving its streets and that the State Highway Board might know

that in working upon these streets it would not encroach upon the private property of any citizen. Several provisions of the charter of the city must be considered in passing on this contention. Section 80 (Ga. L. 1918, p. 859) provides that the city commission "shall have full power and authority to lay out, establish, plot, open, widen, narrow, straighten, extend, grade, pave, or macadamize streets, . . or to have same done under the direction of the city manager;" and to carry this into effect power is given to exercise the right of eminent domain in accordance with the general laws of the State. Section 79 makes it the duty and confers upon the city manager full power and authority to improve and keep in repair the streets of the city. Section 125 confers upon the city the power to condemn or acquire lands for streets outside the corporate limits "for the purpose of connecting the streets, lanes, and alleys of said city with public highways outside of the city limits," and then authorizes the construction and maintenance of these connecting streets lying outside of the corporate limits, and further gives power to condemn any property necessary for such purposes. Section 74 provides, "That said City of Rome, through said city commission, shall have full power and authority to make contracts concerning and having exclusive power over the streets, alleys," etc. This is a very broad power, and apparently authorizes the making of any kind of a contract with reference to the streets; provided, of course, the public use thereof is not interfered with. Section 66 authorizes and empowers the city commission to levy a tax upon all property, real and personal, within the city.

Keeping in mind the foregoing powers conferred and duties imposed upon the city and its officials, the provisions of section 42 of the charter are in no way ambiguous or uncertain. The material part of that section is as follows: "That for the purpose of raising revenue for the support and maintenance for the government of said City of Rome, including the payment of bonds, interest on the bonded debts, and the creation of a sinking-fund for the extinguishment of said bonded debts, and for paving and macadamizing streets, the said city commission shall have full power and authority for the assessment, levy, and collection of an ad valorem tax on all real and personal property owned or held within the corporate limits of said city," etc. Considering all

these sections together and the interpretation given to similar sections in charters of other municipalities, we can not concur in the contention of the plaintiffs that under the charter of the City of Rome that city has no right or power to levy and collect taxes for the purpose of paying for a right of way for the State Highway Department for a road through the City of Rome, keeping in mind, of course, the purposes for which this improvement is to be made and its relation to the convenience and welfare of the municipality.

■ ■ The contract in question is not beyond the charter powers of the City of Rome, and therefore null and void. A part of that which is said above applies also to this last contention.

■ Another contention is, that, "Under the answer as filed and the map accompanying it, the delegation to the State Highway Department of authority to lay out a street within the City of Rome is in violation of the charter authority of the City of Rome, and the authority thereby granted to the Highway Department by the city is ultra vires, null and void." As hereinbefore pointed out, by section 74 of its charter the City of Rome, through its city commission, is given full power and authority to make contracts concerning its streets. Section 80 expressly authorizes the city to lay out, establish, open up, widen, grade, etc., its streets, "or to have the same done under the direction of the city manager." It thus appears that the city has express power to make contracts for the improvement of its streets. In *Mayor &c. of Washington* v. *Faver,* 155 *Ga.* 680 (117 S. E. 653), a somewhat similar question was raised. There it was contended that the tripartite agreement between the State Highway Board, the County of Wilkes, and the City of Washington was an unauthorized delegation by the city of power and control over its streets. In passing upon that question it was said: "Said contract is not illegal and void because the mayor and council did not themselves lay or contract to lay said pavement, and because it amounted to a delegation of the legislative authority of the city to the county, the State Highway Department and the Federal Government, no such delegation of legislative and official discretion appearing from said resolution and contract." In the opinion it was said: "We do not think that this resolution and the contract between the city and county, based thereon, were void because they rest

upon the delegation by the city council of their legislative authority and of their official discretion in this matter to two of the city's councilmen, and to the County of Wilkes. The determination to pave these streets was legislative in character. This involved official discretion. The city council could not delegate this power and this discretion to two of its members or to the county; but when the city council had decided to pave these streets, then they could delegate the making and the execution of any necessary agreement for this paving to a committee composed of councilmen. The making of the contract for the paving was a ministerial act which a committee of council could be empowered to perform. . . Furthermore, it is not expressly alleged that the city did not approve the character of pavement and all the terms and stipulations embraced in the contract between the city and the county for the paving of these streets, and that the city did not supervise the construction of these pavements." It will be seen that the question in *Washington* v. *Faver,* was not precisely the same as that raised in this case, but the discussion of that question and the reason given for the decision are applicable here.

■ The contract under consideration is not invalid or void on the ground that under the act approved March 26, 1935 (Ga. L. 1935, p. 160), the City of Rome has no authority to expend any of its funds for the purchase of a right of way for a State highway through the city, because the County of Floyd only can purchase such rights of way and pay the direct and consequential damages therefor. See *Mayor &c. of Washington* v. *Faver,* supra; *Faver* v. *Washington,* 159 *Ga.* 658 (126 S. E. 464) ; *Mayor &c. of Washington* v. *Wilkes County,* 36 *Ga. App.* 2 (135 S. E. 448) ; *Wilkes County* v. *Washington,* 167 *Ga.* 181 (145 S. E. 47). To repeat what we have said upon another contention, the question involved here is not precisely the same as that in the above-cited cases, but it involves similar principles, and the reasoning in those decisions is applicable to the question we have before us. In view of what we have said above the judgment should be

*Affirmed. All the Justices concur.*